Revised, January 27, 2000

# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

---

No. 98-31317

---

CHERIE SHIPP, JERRY GATES,

Plaintiffs-Appellees,

versus

ROYCE L. MCMAHON, Sheriff of Webster Parish, Louisiana
STEVE CROPPER, Webster Parish Sheriff's Office Deputy
BETTY SHIPP, Webster Parish Sheriff's Office Deputy
THEODORE L. RISER, Sheriff of Webster Parish Louisiana,

Defendants-Appellants.

---

Appeal from the United States District Court
for the Western District of Louisiana, Shreveport Division

---

January 7, 2000

Before POLITZ and STEWART, Circuit Judges, and LITTLE[*], District Judge

CARL E. STEWART, Circuit Judge:

This case involves the appellants' challenge to the district court's denial of their motion to dismiss the plaintiff's claims brought under 42 U.S.C. § 1983 and state tort law. For the reasons stated below, we affirm the district court's ruling.

---

[*] Chief Judge of the Western District of Louisiana, sitting by designation.

FACTUAL AND PROCEDURAL HISTORY

The appellee, Cherie Shipp (Shipp) was involved in an abusive marriage with her husband, Dalton Shipp ("Dalton") in Shreveport, Louisiana. To escape her husband's abuse, Shipp moved into her sister's house near Minden, Louisiana. When Dalton learned of her whereabouts, he made several threatening phone calls to her, which she reported to deputies of the Webster Parish Sheriff's Office (WPSO). Dalton also on several occasions drove by Shipp's sisters house, which Shipp reported to defendant Steve Cropper ("Cropper"), a Webster Parish deputy. Cropper advised that he would do nothing about Dalton.

Shipp then moved to her cousin's residence in Dubberly, which is also in Webster Parish. Dalton went to the house in Dubberly, attacked Shipp by beating her with a telephone that he ripped from the wall, and hit her with his fist. He threatened that if she reported the incident to law enforcement, she would "find herself in the hospital." After physically abusing her, Dalton took some items belonging to Shipp and her cousin, placed the items in his automobile, and drove off. Despite Dalton's warning, Shipp called the WPSO. Deputy Cropper came to the scene and took a report, but made no immediate effort to arrest Dalton.

Several days later, Deputy Cropper approached Dalton about returning the items he took from Shipp's cousin's residence, but did not arrest him. Dalton was later allowed to turn himself in, and he was charged with simple criminal damage to property and simple battery, both misdemeanor offenses. As a condition of bail, the court ordered that Dalton stay away from Shipp. Later that day, he pleaded guilty to both offenses, and the court ordered him to seek immediate counseling. The court set sentencing for a later date.

Shipp obtained a temporary restraining order ("TRO") which prohibited Dalton from having any contact with her. After Deputy Cropper served Dalton with the TRO, Dalton made several abusive and threatening phone calls to Shipp, which Shipp reported to the WPSO. She was told that nothing could be done about the phone calls, and despite his violations of the TRO and the bail order, the WPSO did not arrest Dalton.

Dalton failed to appear in court for sentencing on the criminal charges, and a bench warrant for his arrest was issued. Although Dalton subsequently appeared in court to answer other criminal charges at the Webster Parish courthouse, deputies nonetheless failed to arrest Dalton for violating the TRO and conditions of bail.

Approximately four months after Dalton failed to appear at the scheduled sentencing hearing, he tracked down Shipp at her other sister's house and talked Shipp out of the house and into his car. Once in the car, Dalton sped away with Shipp's feet dragging the ground. She attempted to jump out of the car, but Dalton grabbed her by the head. Dalton drove Shipp to a house he had leased in Webster Parish.

Shipp's sister telephoned her mother, Carolyn Gates, who reported the incident to the WPSO. Defendant Betty Shipp[1] was the dispatcher who received the phone call. Apparently, Betty Shipp hung up the telephone without conducting an inquiry into the particulars of the incident. Betty Shipp advised Deputy Cropper of the phone call. He chose to take no action, despite his knowledge of Dalton's propensity for violent behavior. Neither Cropper nor Betty Shipp dispatched information to alert the other deputies.

---

[1] The pleadings do not indicate whether Deputy Betty Shipp is related to the plaintiff or the plaintiff's husband.

3

After having her phone call terminated by the WPSO, Shipp's mother called the Minden Police Department, which dispatched an emergency alert and radioed the WPSO. Shipp's mother then picked up Jerry Gates, Shipp's father, and drove to the Webster Parish courthouse. They observed Deputy Cropper standing idly outside the courthouse. Cropper advised Mr. Gates that he intended to do nothing to apprehend Dalton. After they discussed where Dalton may be located with Shipp, Mr. Gates denounced Cropper's unwillingness to act, and told him that he was heading to the leased house. Deputy Cropper and another deputy pursued Mr. Gates.

Subsequently, Mr. Gates and four deputies arrived at the house. When the deputies made no effort to enter the house, Mr. Gates attempted to approach the house, but was restrained by the deputies. Cropper then knocked on the door, explaining that he had to ascertain whether Shipp was in the house voluntarily with Dalton. No one inside answered Cropper's knock.

Mr. Gates observed what he believed to be a silhouette on the curtain of Dalton with a gun. Mr. Gates again attempted to approach the house, but the deputies ordered him back. A shot rang out from the house and the deputies immediately retreated to their vehicles to put on armored vests. Another shot ranged out as the deputies remained crouched behind their cars.

Inside the house, Dalton had raped Shipp. After shooting her in the chest with a 12-gauge shotgun, he shot himself. Shipp staggered to the door and unsuccessfully attempted to open it. She screamed for help, but none of the deputies responded. Shipp eventually staggered out a side door holding her entrails in her hands.

As she exited the house, Shipp's mother and a deputy raced to her aid. Mr. Gates also dashed towards Shipp, but he was abruptly intercepted by Cropper. At Cropper's order, another deputy handcuffed Mr. Gates and removed him from the scene.

4

Shipp was transported to the hospital, where emergency surgery was performed on her. She was hospitalized for several weeks, followed by rehabilitation, therapy, and follow-up surgery. Dalton recovered from his wounds and was subsequently charged with aggravated rape, aggravated kidnapping, and attempted second degree murder. As of the date of this opinion, he is currently being detained in Webster Parish jail pending trial, but has been permitted on several occasions to leave the jail and roam relatively unfettered throughout Webster Parish. Since the incident, the WPSO has not imposed any discipline on any deputy.

In February 1997, Shipp and Mr. Gates filed an action under 42 U.S.C. § 1983 in federal district court against Sheriffs Royce McMahon and Theodore Riser,[2] and WPSO deputies Shipp and Cropper ("defendants"). Shipp and Mr. Gates claimed that the defendants violated their federal constitutional due process and equal protection rights. Shipp and Gates also alleged claims based on Louisiana state tort law. The defendants moved to be dismissed under Rule 12(b)(6). In January 1998, the magistrate judge filed a report recommending that: (1) all of Shipp's federal constitutional claims, with the exception of the Equal Protection claim and the related failure to train claim, be dismissed with prejudice; (2) all federal claims by plaintiff Jerry Gates be dismissed with prejudice, and (3) all claims against Sheriff Theodore L. Riser be dismissed with prejudice, and (4) the motion be denied in all other aspects. The district court adopted the magistrate judge's findings and recommendation. The district court also exercised supplemental jurisdiction over the state tort law claims and ordered Shipp to file a reply responding to deputies Cropper and Shipp's defense of qualified immunity ("Schultea reply"). After reviewing Shipp's reply to the qualified immunity issue, the district court found that Shipp had met the heightened pleading standard articulated in Schultea

_____

[2] Sheriff Riser succeeded Sheriff McMahon after the rape and shooting incident.

v. Wood, 47 F.3d 1427 (5th Cir. 1995) (en banc), and denied the defendants' motion to dismiss. The defendants now appeal the district court's ruling denying their motion to dismiss based on qualified immunity.

### STANDARD OF REVIEW

Denials of motions to dismiss on qualified immunity grounds are appealable collateral orders when based on issues of law. See Mitchell v. Forsyth, 472 U.S. 511, 525, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); Champagne v. Jefferson Parish Sheriff's Office, 188 F.3d 312 (5th Cir. 1999)(per curiam). We review the district court's ruling under Rule12(b)(6) de novo. See Lowrey v. Texas A & M University System, 117 F.3d 242, 246 (5th Cir. 1997). A motion to dismiss under rule 12(b)(6) "is viewed with disfavor and is rarely granted." Kaiser Aluminum & Chem. Sales v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir.1982). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. Campbell v. Wells Fargo Bank, 781 F.2d 440, 442 (5th Cir.1986). The district court may not dismiss a complaint under rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Coneley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-02, 2 L.Ed.2d 80 (1957) This strict standard of review under rule 12(b)(6) has been summarized as follows: "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." 5 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURES 1357, at 601 (1996).

### DISCUSSION

The defendants argue that the district court erred when it denied their motion to dismiss. Specifically, the defendants assert that Shipp did not comply with Schultea because she failed to plead discriminatory motive for her equal protection claim with the requisite specificity. Furthermore, the defendants maintain that Shipp failed to plead causation sufficiently. The defendants also claim that the court erroneously rejected their claim of qualified immunity. Finally, the defendants argue that the court improperly exercised jurisdiction over the pendent state law tort claims.

I.      Heightened Pleading Requirement

Rule 8(a) of the Federal Rules of Civil Procedure requires a short and plain statement of the claim showing that the plaintiff is entitled to relief. Pursuant to Rule 8(a), a complaint will be deemed inadequate only if it fails to (1) provide notice of circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist. See General Star Indemnity, Co. v. Vesta Fire Ins., Corp., 173 F.3d 946, 950. (5th Cir.1999). A plaintiff suing a public official under § 1983 must file a complaint that rests on more than conclusions alone. In Schultea, we held that if a defendant raises the defense of qualified immunity, the district court may order the plaintiff under Rule 7 of the Federal Rules of Civil Procedure to file a reply tailored to answer the defendant's assertion of qualified immunity. See 47 F.3d at 1431. Furthermore, in cases involving an allegation of improper discriminatory motive, the district court may sua sponte or on the defendant's motion order the plaintiff to "'put forward specific, nonconclusory factual allegations' that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal or summary judgment." See Crawford-El v. Britton, 523 U.S. 574, 118 S.Ct. 1584, 1596-1597, 140 L.Ed.2d 759 (1998) (citation omitted).

7

Our de novo review of the pleadings, in particular Shipp's reply to the defendants' assertion of qualified immunity, reveals that Shipp has sufficiently pleaded discriminatory motive and causation. In her reply, Shipp essentially provides a fact specific historical account of the defendants' failure to respond to Shipp and her mother and father's complaints about Dalton. She also details the defendants' failure to arrest Dalton for his violation of the TRO and conditions of bail. The deputies were also aware of Dalton's propensity for violence. To comply with the court's Schultea order, Shipp pleaded that the defendants' failure to act was attributable to discriminatory motive, and that the defendants' failure to act caused her injuries. Although Shipp's pleadings do not identify direct evidence of discriminatory intent, the "specific, nonconclusory factual allegations" requirement does not prevent a plaintiff from relying on circumstantial evidence. See Warnock v. Pecos County, Texas, 116 F.3d 776, 779 (5th Cir. 1997)(quoting Siegert v. Gilley, 500 U.S. 226, 236, 111 S.Ct. 1789, 1795, 114 L.Ed2d 277 (1991)(Kennedy, J., concurring)).

Nevertheless, the defendants claim that Shipp fails to meet Schultea's specificity requirement because Shipp does not show that the defendants violated any statute or ordinance. The defendants also claim that Shipp does not show that some other citizen received protective services that Shipp was denied. The defendants also allege that Shipp does not plead that the defendants said anything that can be deemed as exhibiting invidious discrimination. Finally, the defendants assert that Shipp's injuries were caused solely by Dalton, and thus Shipp does not show causation.

However, the defendants misread Schultea's specificity requirement. Schultea does not require the level of specificity the defendants assert. The level of specificity advanced by the defendants is similar to the "clear and convincing" standard which the Supreme Court rejected in Crawford-El. In that case, the Court observed that "[n]either the text of § 1983 or any other federal

8

statute, nor the Federal Rules of Civil Procedure, provides any support for imposing the clear and convincing burden of proof at the summary judgment phase." Therefore, if such a heightened standard of proof is not required at summary judgment or at trial to show discriminatory intent, it follows that such a heightened standard should not be applied to determine whether a claim survives a 12(b)(6) motion to dismiss. Therefore, Shipp's reply meets Schultea's requirement.

II.     Qualified Immunity

The defendants claim that the district court erred when it ruled that they were not entitled to qualified immunity during the motion to dismiss phase. In order to survive a motion to dismiss, Shipp's allegations must portray an objectively unreasonable violation of a clearly established right. See Warnock, 116 F.3d at 779 (citations omitted). Thus, courts engage in a two-step analysis to address claims of qualified immunity.

First, to show that a right is clearly established, the plaintiff does not have to refer to precedent that is directly on point, or that declares that the conduct in question is unlawful. Rather, the right is clearly established if based on pre-existing law, the unlawfulness of the conduct in question is apparent. See Doe v. Independent School Dist., 15 F.3d 443, 455 (5th Cir 1994)(en banc), cert. denied, 513 U.S. 815, 115 S.Ct. 70 (1994). Thus, the face of the plaintiff's pleadings must articulate a clearly established right at the time of the alleged violation.

Shipp's Schultea reply contends that the WPSO's failure to implement policies and training to address domestic violence amounts to a violation of Equal Protection. Apparently, because a substantial number of victims of domestic violence are women, Shipp contends that WPSO's practices have an adverse impact on women.

9

To determine whether Shipp articulated a clearly established right, we begin by recognizing as a general matter, that the Equal Protection clause of the Fourteenth Amendment prohibits a state from engaging in intentionally discriminatory conduct that has a disparate impact on women unless the state can show an "exceedingly persuasive justification for that action." See United States v. Virginia, 518 U.S. 515, 530, 116 S.Ct. 2264, 2274, 135 L.Ed.2d 735 (1996). Although there is no Supreme Court precedent directly on point as to whether a law enforcement agency's policy or course of conduct discriminating against women victims of domestic violence constitutes intentional discrimination against women under Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d. 597 (1976), the Court nonetheless observed in Deshaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989), that, "The State may not, of course, selectively deny its protective services to certain disfavored minorities without violation of the Equal Protection Clause." Id. at 197, 109 S.Ct. at 1104, n. 3 (citation omitted). In McKee v. City of Rockwell, 877 F.2d 409, (5th Cir. 1989), we concluded that in order for a plaintiff to maintain her claim that the police's failure to effectuate an arrest regarding a domestic violence incident amounted to an Equal Protection violation, the plaintiff must show that "the 'non arrest' was the result of discrimination against a protected class." Id. at 144.

Although, the defendants point out that there is no constitutional violation when the most that can be said is that the police stood by and did nothing, see McKee 877 F.2d at 412, nonetheless, Shipp does more that claim police inaction. Shipp claims that the WPSO intentionally adopted policies and customs that afforded less protection to women victims of domestic violence than other

10

victims. Thus, we find that Shipp articulates a clearly established right under the minimum requirements of Rule 12(b)(6).[3]

Under the second prong of the qualified immunity analysis, the plaintiff must show that the defendant's violation of a clearly established right was objectively unreasonable. See Sanchez v. Swyden, 139 F.3d 464, 467 (5th Cir. 1998). Whether the defendants' conduct was objectively reasonable depends on the circumstances controlling the defendants as well as clearly established law in effect at the time of the defendants' actions. Id. In the instant case, Shipp claims that the WPSO adopted polices and customs that discriminated against women victims of domestic violence. Shipp also claims that deputies Shipp and Cropper intentionally declined to arrest Dalton, in spite of his known propensity for violence and his known violation of the TRO and conditions of bail. Shipp also claims that the deputies had encountered Dalton on several occasions with knowledge that a warrant had been issued for his arrest, but yet the deputies declined to arrest him. Our 12(b)(6) analysis confines us to accept these allegations as true, and thus we find that the alleged conduct was not objectively reasonable. Therefore, we affirm the district court's ruling to deny the defendants' assertion of qualified immunity at this juncture.[4]

---

[3] In McKee, the court held that the plaintiff's Equal Protection claim failed to survive summary judgment because the plaintiff provided insufficient evidence to show that the police department's policies intentionally discriminated against women victims of domestic abuse. That result is not controlling here since the burden of proof under Rule 56(c) is substantially higher than that required under Rule 12(b)(6).

[4] Our ruling should not be interpreted as relieving the plaintiff of the obligation of producing sufficient evidence beyond the face of the pleadings to sustain her claims. "Summary judgment serves as the ultimate screen to weed out truly insubstantial lawsuits prior to trial." Crawford El, 523 U.S. 574, 118 S.Ct. at 1597. As such, we merely find that based on the face of the pleadings, Shipp's claims should go forward.

11

Because we are of the view that Shipp's Equal Protection claims should be allowed to proceed, we affirm the district court's decision to retain supplemental jurisdiction over Shipp's state law claims.  See 28 U.S.C. § 1367.

CONCLUSION

We AFFIRM the district court's rulings, and the case is remanded for further proceedings consistent with this opinion.

AFFIRMED.