**Ricky NELSON**

v.

**Richard STALDER, et al.**

**No. Civ.A. 98–1893.**

United States District Court, E.D. Louisiana.

Feb. 13, 2001.

---

Robin Elise Schulberg, Robin E. Schulberg, Attorney at Law, Covington, LA, for Ricky Nelson, plaintiff.

Michael Courtney Keller, Department of Justice, Litigation Div., New Orleans, LA, for Richard Stalder, Danny Creed, Kelly Ward, Jean Baker, Joan Carter, Claudia Laperouse, Henry Goins, defendants.

## ORDER AND REASONS

LEMMON, District Judge.

Plaintiff Ricky Nelson has sued defendants Richard Stalder, Johnny Creed, Kelly Ward, Jean Baker, Henry Goines, Joan Carter, and Claudia Laperouse under 42 U.S.C. § 1983. All defendants have moved for summary judgment on the issue of qualified immunity. Nelson has moved for partial summary judgment on the issue of Goines' liability.[1] For the following reasons, **IT IS HEREBY ORDERED:**

1. Nelson had already been released from custody at the time he filed his second amended complaint. Therefore, any request for injunctive relief is moot.

(1) On defendant's motion for summary judgment (Document 68):

Nelson's Eighth Amendment claim is **DISMISSED.** Nelson's claims against defendants Stalder, Creed, Carter, and Laperouse are **DISMISSED.**[2] In all other respects, defendants' motion for summary judgment is **DENIED.**

(2) Nelson's motion for partial summary judgment (Document 66) is **DENIED.**

## A. Background.

Nelson was convicted of burglary and received an eight-year sentence in 1991. He was released on "good time" parole supervision on February 26, 1995, but was arrested again on April 17, 1995 and charged with simple battery and armed robbery. Although bond was set, the next day a "parole hold" was placed on Nelson and a detainer issued. Nelson deferred his parole revocation hearing until disposition of the new charges.

Nelson pleaded guilty to four counts of simple battery on March 19, 1996 (two counts each in cases 263,233 and 263,202) and received thirty-day concurrent sentences, with credit for time served. The district attorney *nolle prosequied* the armed robbery charge. Nelson was mistakenly released from custody because the jail overlooked the "parole hold." He was rearrested on March 25, 1996. The parole board revoked his probation on April 25, 1996, finding that Nelson (1) failed to report to his officer, (2) bought and consumed cocaine, (3) admitted to using crack cocaine with others, (4) pled guilty to two counts of simple battery, (5) made home visits impossible for his parole officer, and (6) refused to enter Blue Walters (a drug rehabilitation facility) as ordered. Nelson returned to prison to serve the three-and-a-half year remainder of his original sentence.

At some point Nelson realized that he was not given any credit towards his original sentence for the eleven months he spent in jail prior to entering his guilty plea on the simple battery charges. In June 1996, his complaints came to the attention of defendants Carter and Laperouse, both of whom worked under defendant Goines, the Records System Analyst Administrator in the Department of Corrections Central Headquarters who was responsible for calculating release dates. Carter and Laperouse specifically asked Goines whether plaintiff should receive credit for time served toward his parole sentence for his incarceration from April 18, 1995 to March 19, 1996, in excess of his 30–day sentence. Goines, who is a non-lawyer with undergraduate degrees in Psychology and Theology, did not seek legal advice, but summarily denied the credit, with the following explanation:

Ricky Nelson

A

(1) The P.V. Warrant *did not* cause the arrest.

(2) The fact that he received a *less sentence* than the time in custody is irrelevant. The time in custody went toward the Battery.

(3) In fact the *battery* cause the arrest.

/signature/

10/1/96

(Emphasis in original). Goines did not spend much time on Nelson's situation, and testified at his deposition that the question of the correct computation of Nelson's sentence was one of "many many questions" he had to answer.[3]

---

**2.** Nelson does not oppose dismissal of these defendants.

**3.** Deposition at 48. Goines also testified that "in view of the fact of the number of cases I

Although there is no mention in his notes of his reliance on LSA–R.S. 15:574.9(E), at his deposition Goines testified that in reaching his conclusion that Nelson should not be credited with time served, he relied on that statute, which provides:

When the parole of a parolee has been revoked by the board for the violation of the conditions of parole, the parolee shall be returned to the physical custody of the Department of Public Safety and Corrections, office of corrections services, and serve the remainder of his sentence as of the date of his release on parole, subject to consideration by the board of any commutation of the sentence; and any diminution of sentence earned for good behavior while in the institution. The parolee shall be given credit for time served prior to the revocation hearing whether such time is served in a local detention facility, state institution, or out-of-state institution, except that **the parolee shall not receive credit for such time served prior to the revocation hearing where the hearing does not result in revocation, or the revocation is based on the subsequent conviction of a crime, in which case the parolee will receive credit for time served for the subsequent conviction pursuant to Code of Criminal Procedure Article 880.** (Emphasis added).

Goines testified that, in his opinion, this statute means that "a person who's on supervision and who was arrested for some—for a crime and was subsequently convicted of the crime and subsequently revoked for that crime, that person's not entitled to jail credit for the time he spent in custody on the parole sentence."[4]

Nelson then pursued his administrative remedies. On November 18, 1996, defendant Baker, Records System Manager at the Wade Correctional Center, wrote the First Step Response:

Refer to the comments on your Master Prison Record. The credit of 4–17–95 applied to the S/battery charge you were arrested for. You were released after serving this time. You were arrested on 3–25–96 to serve the balance of your GT/PV sentence.

Baker's interrogatory responses stated that in deciding that Nelson would not get credit towards his original sentence for the eleven months he had served, she "examined the plaintiff's master prison record. She reviewed the Master Record, the Transfer Record Inquiry, the Time Computation and Jail Credits sheet, the Jail Credits for D.O.C. Commitments Sheet, and the Release Date Computation Information sheet."

Nelson continued to press his claim. On December 13, 1996, defendant Ward, the Warden of the Wade Correctional Center, wrote the Second Step Response:

I have read your Request for Administrative Remedy dated 10/29/96 in which you complain about your time computation. I have also read Mrs. Baker's 11/18/96 First Step Response. I have reviewed your prison record with Mrs. Baker. Her response is accurate and complete. There is no merit in your ARP; no further action is planned.

Ward's interrogatory responses indicate only that he spoke to Baker and reviewed the same records she had examined in affirming her decision.

Nelson then filed suit in the 19th Judicial District Court (No. 435,653). Commis-

---

review during the course of the day, I don't recall any specific thing about this case." *Id.* at 53.

4. Goines deposition at 40.

sioner Rachel P. Morgan agreed with Nelson:

> Notations in the Department's work sheets indicate that the reason for denying credit for time spent in excess of the battery sentence was that the parole violation warrant did not cause the Plaintiff's initial arrest but rather the battery, and that the time spent in custody should be credited toward the battery, even though the time in jail exceeded the battery sentence. Despite the Department's expertise, the logic and equity of that conclusion eludes this Writer. Despite my inability to find case law directly on point, the language of several cases indicates that a prisoner is entitled to credit for time served if the time he served before the imposition of sentence, (or analogously parole revocation), has not been credited against any other sentence.[5]

Commissioner Morgan also addressed defendant's reference to LSA–R.S. 15:574.9:

> This writer is cognizant of the language of R.S. 15:573.10 [6] that a parolee shall be given credit for time served prior to the revocation hearing for any time served in a local facility, with the exception that the parolee shall not receive credit for that time served where the hearing does not result in a revocation or the revocation is based on the subsequent conviction of a crime. In this case, the Petitioner alleges and such allegations are uncontradicted by the administrative record, that he was revoked for drug usage and for his conviction on the Misdemeanor Battery charge. Despite the excepting language of R.S. 15:574.10 [7] regarding denial of credit for time served when the revocation is based on the subsequent conviction of a crime, this Writer is of the opinion that **due process considerations would not warrant the refusal to grant credit, when the actual time spent in jail pending the revocation hearing exceeded greatly the maximum sentence actually authorized for an underlying misdemeanor conviction, rather than a felony.**

> Although an administrative record including the parole violation proceedings and pertinent information regarding the battery arrest, conviction, and sentence and based on the record submitted, this Writer is of the opinion that **the decision of the Agency in this matter to deny credit for time served in excess of the Simple Battery sentence, on the charge for which the Petitioner was paroled, is arbitrary, capricious and an abuse of discretion.** This finding is based on the language of the First, Second and Third Circuits indicating that one is entitled to credit for time served against a sentence, if the time he served before the imposition of that sentence has not been credited against any other sentence.[8]

(Emphasis added). Judge Curtis A. Calloway agreed with Commissioner Morgan, and on December 9, 1997 he ordered the Department of Corrections to credit Nelson with time served beyond the 30–day period for simple battery. The court's judgment stated:

> IT IS ORDERED, ADJUDGED AND DECREED, that judgment be rendered in favor of Plaintiff and against

---

5. Commissioner's Report at 5.

6. This is a typographical error. There is no such statute.

7. This is probably a typographical error. LSA–R.S. 574.10 provides that a parolee who commits a felony shall have his parole revoked.

8. Commissioner's Report at 6.

the Defendants, Louisiana Department of Public Safety and Corrections, in that the Department is required to recompute the Plaintiff's time to be served, allowing the Plaintiff credit for all time served in excess of the 1996 Simple Battery conviction and sentence served during the time period of April 18, 1995 through March 19, 1996, (to further clarify this judgment, the Defendants are required to credit the Plaintiff with all time served in jail from April 18, 1995 through March 19, 1996, with the exception of the time the Plaintiff served on the Simple Battery conviction). All costs of these proceedings are to be paid by the Defendant, Louisiana Department of Public Safety and Corrections.

The Department of Corrections did not appeal this judgment. Nelson was released the next day, about ten days prior to the date on which the Department would have released him under its own computation, and ten months beyond the correct calculation as determined by the Nineteenth Judicial District Court.

### B. Defendants' motion for summary judgment.

All defendants move for summary judgment that they are entitled to qualified immunity. Nelson does not contest defendants' motion insofar as it seeks summary judgment on his claims against Stalder, Creed, Laperouse, and Carter; he only contests whether Goines, Ward, and Baker are entitled to summary judgment.

 In *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the United States Supreme Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known." *Id.* at 818, 102 S.Ct. 2727. The Fifth Circuit has held that qualified immunity claims are analyzed in two steps:

The qualified immunity analysis involves a two-step process. First, we examine whether the plaintiff has alleged a violation of a clearly established constitutional right. If the court determines that the plaintiff has alleged a violation of a clearly established constitutional right, the next step is to determine whether the official's conduct was objectively reasonable at the time of the incident.

*Shipp v. McMahon*, 234 F.3d 907, 911–12 (5th Cir.2000) (citations omitted); *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir.1994). The Fifth Circuit has also explained the parties' burden of proof at the summary judgment stage:

In this circuit, the qualified immunity defense involves a shifting burden of proof. Although we sometimes shorthandedly refer to only one party's burden, the law is that both bear a burden. The defendant official must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law. The Fifth Circuit does not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs.

*Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992); *Beck v. Texas State Bd. of Dental Exam'rs*, 204 F.3d 629, 633–34 (5th Cir.), *cert. denied*, —— U.S. ——, 121 S.Ct. 171, 148 L.Ed.2d 117 (2000); *Pierce v. Smith*, 117 F.3d 866, 871–72 (5th Cir.1997); *see also Blackwell v. Barton*, 34 F.3d 298,

301 (5th Cir.1994) ("As [defendant] asserted his entitlement to qualified immunity in a properly supported motion for summary judgment, the burden was on [plaintiff] to come forward with summary judgment evidence sufficient to sustain a determination that [defendant's] actions violated clearly established federal law."). In this case defendants acted within the scope of their discretionary authority. *See Tamez v. City of San Marcos*, 118 F.3d 1085, 1092 (5th Cir.1997) ("An official acts within his discretionary authority when he performs nonministerial acts within the boundaries of his official capacity."), *cert. denied*, 522 U.S. 1125, 118 S.Ct. 1073, 140 L.Ed.2d 132 (1998). Thus, the burden shifts to Nelson to "rebut this 'good faith' defense." *Cronen v. Texas Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir.1992). In order to overcome the defense of qualified immunity, Nelson has the burden of demonstrating the two step process of *Shipp*: that defendants' conduct violated clearly established law and that defendants' conduct was objectively unreasonable.

1. **Has Nelson alleged a violation of a clearly established constitutional right?**

■ The Fifth Circuit has held that "[w]hen evaluating a claim of qualified immunity under the 'clearly established right' prong, a court first must determine whether the 'plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation'." *Shipp*, 234 F.3d at 912 (*quoting Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). Thus, the court must determine whether imprisonment beyond the term of a prisoner's sentence constitutes a deprivation of an actual constitutional right, and whether any such right was "clearly established" when the deprivation allegedly occurred. Nelson alleges that defendants' conduct violates his rights under the Eighth and Fourteenth Amendments.

a. **The Eighth Amendment.**

■ The Eighth Amendment to the United States Constitution provides that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. Amend. VIII. It is well established that "[c]onfinement in a prison ... is a form of punishment subject to scrutiny under Eighth Amendment standards." *Hutto v. Finney*, 437 U.S. 678, 685, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). The issue is whether it is clearly established law in the Fifth Circuit[9] that imprisonment beyond the term of a prisoner's sentence constitutes "cruel and unusual punishment" in violation of the Eighth Amendment.

The Fifth Circuit precedent is that a challenge to the **fact** of incarceration rather than the **conditions** of incarceration does not state a cause of action under the Eighth Amendment. In *Jones v. City of Jackson*, 203 F.3d 875 (5th Cir.2000), the Fifth Circuit addressed a claim very simi-

---

9. There are several cases from other jurisdictions holding that prison officials violate the Eighth Amendment if they incarcerate a defendant beyond his term. *E.g., Sample v. Diecks*, 885 F.2d 1099, 1109–1110 (3d Cir. 1989); *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir.1985) (*en banc*), *cert. denied*, 478 U.S. 1020, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986); *Watkins v. Horn*, No. 96–4129, 1997 WL 266837, at *7 (E.D.Pa. May 13, 1997); *Campbell v. Illinois Dep't of Corrections*, 907 F.Supp. 1173, 1180 (N.D.Ill.1995); *Plumb v. Prinslow*, 847 F.Supp. 1509, 1521 (D.Or.1994). Two other unpublished decisions reached the same result. *E.g., Golson v. Dep't of Corrections*, No. 90–7344, 1990 WL 141470, at *1 (4th Cir.1990); *Mitchell v. New Mexico Dep't of Corrections*, No. 93–2038, 1993 WL 191810, at *3 (10th Cir.1993).

lar to that currently raised by Nelson. The *Jones* plaintiff entered a guilty plea to three burglary counts. He received a sentence of two years of incarceration and five years of probation on one count, and the sentences on the other two counts were left open. Jones was released from custody after completing two years. However, a bench warrant was issued for his arrest for his failure to appear for sentencing on the other two counts. Jones was later arrested on an outstanding warrant for assault. While in custody, a detainer was lodged against him based on the bench warrant relating to the open sentences. The new charges were dismissed, but Jones remained in jail for nine more months under the bench warrant. Finally, the judge that issued the bench warrant dismissed the petition relating to the alleged probation violation, vacated the detainer, and ordered the sheriff immediately to release Jones from custody. Jones then filed suit against several municipal defendants and numerous individuals, alleging that they had violated his Eighth Amendment rights by detaining him. The Fifth Circuit rejected Jones' Eighth Amendment claim:

> Jones alleged that his incarceration constituted cruel and unusual punishment in violation of the Eighth Amendment. " 'The primary purpose of [the Cruel and Unusual Punishments] clause has always been considered ... to be directed at the method or kind of punishment imposed for the violation of criminal statutes....' " Jones, complaining about the fact of his incarceration rather than its conditions, fails to state a cause of action under the Eighth Amendment.

*Id.* at 880 (brackets and ellipses in original; citations omitted) (*quoting Ingraham v. Wright,* 430 U.S. 651, 667, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977)). Like the *Jones* plaintiff, Nelson has challenged the fact of his incarceration rather than its conditions. Thus, Nelson has not alleged the violation of a clearly established Eighth Amendment right.[10]

### b. The Fourteenth Amendment.

The United States Supreme Court has held that:

> "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.' " Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action. "It is clear that commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," We have always been careful not to "minimize the importance and fundamental nature" of the individual's right to liberty.

*Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) (citations omitted);[11] *see also Reno v. Flores,*

---

**10.** On November 24, 1998, Magistrate Judge Wilkinson issued a Report and Recommendation in this case suggesting that the court deny a motion to dismiss filed by defendant Stalder. In the course of that Report and Recommendation, Magistrate Judge Wilkinson determined that "Nelson's imprisonment for ten months beyond his release date may constitute a deprivation" cognizable under the Eighth Amendment. Report and Recom- mendation at 5. The court later adopted the Report and Recommendation and denied Stalder's motion. At the time Magistrate Judge Wilkinson entered his Report and Recommendation, the Fifth Circuit had not yet decided *Jones,* which now makes clear that Nelson does not have an Eighth Amendment claim.

**11.** *Quoting Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990);

507 U.S. 292, 301–02, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (due process includes "a substantive component, which forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest").

*Jones* specifically addressed the applicability of the Fourteenth Amendment in a context similar to that now before the court:

> Jones has also alleged violations of his Fourteenth Amendment due process rights, which are protected from unconstitutional actions by state actors. Prohibition against improper use of the "formal restraints imposed by the criminal process" lies at the heart of the liberty interests protected by the Fourteenth Amendment due process clause. The Fourteenth Amendments protection of Jones's liberty interest was clearly established in 1994–1995, and Jones's alleged nine month detention without proper due process protections was not objectively reasonable in light of the clearly established legal rules. We must therefore affirm the denial of qualified immunity as to Jones's Fourteenth Amendment claims.

*Jones,* 203 F.3d at 880–81 (citations omitted).

In this case, the court finds that it was clearly established in October, November, and December 1996 that Nelson had a substantive due process right not to be held in prison longer than the term of his sentence.

■ The court also finds that Nelson's allegations implicate procedural due process. At its core, the "fundamental re-

quirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner'." *Crowe v. Smith,* 151 F.3d 217, 230–31 (5th Cir.1998) (*quoting Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)). Nelson alleges that his original review by Goines and his first and second step hearings by Baker and Ward were anything but meaningful; he alleges that Goines, Baker, and Ward virtually ignored his protestations, and myopically refused to give his complaints serious consideration. Nelson further alleges that none of these individuals is trained in the law, and refused to refer his situation to an attorney. Faced with similar claims in the *Sample* case, the Third Circuit concluded:

> [W]e are constrained to agree with Sample that due process entitled him to an opportunity to have his claim to a January 15, 1980 release date meaningfully and expeditiously considered. His interest in avoiding wrongful detention was obviously a strong one. The risk of error in calculating a release date, as Sample's case demonstrates, is both substantial and one that can be materially reduced by the simple expedient adopted in regulation OM–9—authorizing records officers promptly to hear the inmate's "side of the story" and promptly to refer doubtful issues to someone trained in the law and with authority to resolve the controversy. The additional administrative burden from this expedient appears modest and is substantially outweighed by its utility in reducing the risk of overstays.

*Sample,* 885 F.2d at 1115.[12]

Thus, the court finds that it was clearly established in October, November, and De-

---

*Jones v. United States,* 463 U.S. 354, 361, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983); and *Unit-*

*ed States v. Salerno,* 481 U.S. 739, 750, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

**12.** The court is confined to cases from the

cember 1996 that Nelson had a procedural due process right to have his administrative complaints meaningfully heard by prison officials.

### 2. Was defendants' conduct objectively reasonable at the time of the incident?

■ Defendants are entitled to qualified immunity if their conduct was objectively reasonable. *Duckett v. City of Cedar Park*, 950 F.2d 272, 280 (5th Cir.1992). Defendants should be given qualified immunity unless their actions "were patently incompetent or intentionally flouted the law." *Brady v. Fort Bend County*, 58 F.3d 173, 173 (5th Cir.1995); *see also Shipp*, 234 F.3d at 915 (noting that "courts have narrowly adjudicated issues of qualified immunity largely to the benefit of government officials," and qualified immunity protects " 'all but the plainly incompetent or those who knowingly violate the law' ") (*quoting Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). At the summary judgment stage, "If, upon viewing the evidence in the light most favorable to the non-movant, reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to qualified immunity." *Harper*, 21 F.3d at 600.

■ In the litigation between Nelson and the Department of Corrections in state court, Commissioner Morgan found, and Judge Calloway agreed, that the Department had incarcerated Nelson beyond his term. Defendants argued that the eleven months Nelson spent in prison somehow applied *in toto* to his subsequent thirty-day sentence for the simple battery conviction. The provisions in LSA–R.S.

15:574.9 E., that an inmate shall not receive credit for the time spent in prison prior to a probation revocation if the revocation is "based on the subsequent conviction of a crime," is silent about credit to the inmate of time spent prior to a probation revocation which substantially exceeds the sentence for the subsequent conviction. The court found that the reading given to the statute by Goines, Baker and Ward was not a reasonable reading.

Nelson repeatedly requested that his sentence be calculated to include full credit for the time served. Defendants failed to take steps to comply with Nelson's clearly established constitutional right to be free once his sentence was served. Defendants gave a simplistically inaccurate statutory interpretation characterized by Commissioner Morgan as "arbitrary, capricious, and an abuse of discretion." Even after having been alerted by Nelson that his constitutional right was being violated, defendants took no steps to obtain legal advice on the statutory interpretation. The interpretation placed on the statute cannot be held to be objectively reasonable where the eleven months of jail time were applied to satisfy a 30–day sentence. Goines' deposition testimony discloses the position taken by Goines:

Q: Do you ever consider in reaching your decision that Mr. Nelson would have served time that wouldn't be credited anywhere?

A: My understanding of the case is that the time that he spent in custody prior to his arrest and conviction was credited toward the new sentence.

---

Fifth Circuit and United States Supreme Court in determining whether Nelson's constitutional rights were clearly established. However, as *Crowe* and *Mathews* demonstrate, the *Sample* analysis reflects general principles applicable under governing precedent.

Q: Well, in fact, he served 11 months awaiting—between the time that the parole hold was issued and the time that he pled guilty to Simple Battery; is that not true?

A: That's what's suggested in the record.

Q: And he was sentenced to 30 days; is that not true?

A: That's what's suggested in the record.

Q: So there was 10 months that didn't go anywhere; is that not true?

A: My understanding of that sentence was credited toward his new sentence.

Q: The new sentence was 30 days; is that not true?

A: That's what's suggested in the record.

Q: So, where did the other 10 months go; what was that credited to?

A: It went toward the new sentence.

Q: How could it be if there was 11 months that he served?

A: It still went toward the new sentence, the way I understand it.

Q: So, you never considered the fact that his sentence was shorter than the time that he actually served?

A: I never considered that fact because the law, as I understand 15:547.9(E), does not require me to consider that fact.[13]

With regard to defendant Baker, the record is devoid of any evidence whatsoever reflecting what steps she took in meaningfully evaluating Nelson's claim. Baker's First Step Response merely states that the time Nelson spent in prison awaiting resolution of the simple battery charge "applied to the S/battery charge [he was]

arrested for." There is no evidence explaining what investigation she performed in evaluating Nelson's claim, which statutes or cases she may have consulted, or how much time she spent on Nelson's claim. Further, the First Step Response Form refers to "comments on [Nelson's] Master Prison Record," but Baker fails to indicate what those comments were or how they may have supported her decision. Ward's Second Step Response Form reflects only that he reviewed Nelson's record with Baker and spoke to her; there is no evidence demonstrating any additional steps he took.

The court finds that Nelson has satisfied his burden of rebutting defendants' qualified immunity defense by establishing that the defendants' actions violated a law which the court finds was clearly established, and by establishing that those actions were objectively unreasonable. Defendants are therefore not, as a matter of law, entitled to qualified immunity.

**C. Nelson's motion for summary judgment.**

 Nelson has moved for summary judgment on the liability of defendant Goines. Section 1983 provides, in pertinent part, that:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United State or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

---

**13.** Deposition at 56–57.

42 U.S.C. § 1983.[14] Although defendants are not entitled to qualified immunity, disputed issues of material fact still exist that preclude the granting of summary judgment as to liability for the objectively unreasonable actions in holding Nelson longer than his sentence. In order to prove liability, Nelson must prove by a preponderance of the evidence that defendants' conduct meets the due process standard of liability for constitutionally arbitrary executive action. This issue is for the jury to determine. Therefore, Nelson's motion for summary judgment is **DENIED.**

### D. Conclusions.

Nelson does not allege the violation of a clearly established Eighth Amendment right, and defendants' motion is therefore granted on Nelson's Eighth Amendment claim. However, Nelson has demonstrated that defendants' conduct violated clearly established law, and that defendants' conduct was objectively unreasonable. Therefore, the court finds as a matter of law that Baker, Ward, and Goines are not entitled to qualified immunity. The court denies defendants' motion for summary judgment, and denies plaintiff's motion for partial summary judgment.

---

**14.** The parties have not disputed that Goines (and the other defendants) acted under color of state law.