REVISED MAY 2, 2008

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 28, 2008

Charles R. Fulbruge III
Clerk

No. 06-41518
Summary Calendar

BRENDA MATA,

Plaintiff-Appellant,

v.

CITY OF KINGSVILLE, TX; DAWSON B. WEATHERFORD, in His Official
and Individual Capacity; CHIEF RICARDO TORRES, In his Official and
Individual Capacity,

Defendants-Appellees.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:05-CV-491

Before HIGGINBOTHAM, STEWART, and ELROD, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Brenda Mata is appealing the district court's order granting Defendants-Appellees' motion for summary judgment. Finding no error, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.  FACTUAL AND PROCEDURAL HISTORY

Mata and Dawson Weatherford were married on May 16, 1994. Weatherford was employed as a police officer by the City of Kingsville, Texas.

On the afternoon of October 25, 2003, the couple got into an argument. Mata called 911, but the Kingsville police dispatcher who answered the call only heard the caller hang up.  The dispatcher identified that the call was placed from Officer Weatherford's residence and alerted Corporal Charles Barrera of the Kingsville Police Department.  The dispatcher then telephoned the Weatherford residence; Weatherford answered the phone and told the dispatcher that everything was fine.  The dispatcher thought that Weatherford sounded out of breath, and she reported her conversation with Weatherford to Barrera.  Barrera then drove to the Weatherford residence.

When Barrera approached the house, he could hear the couple arguing. He knocked on the door, and Mata opened it.  Barrera asked Weatherford to step outside, where he questioned him about what had happened.  Weatherford admitted that the couple had been arguing and that he had pushed Mata, causing her to fall down.  According to Weatherford, when Mata got up she struck him in the face, cutting his lip.  Weatherford also said that Mata threw a glass bowl at him, striking him in the arm.  Barrera confirmed that, consistent with his account, Weatherford had a cut lip and a bump on his forearm. Weatherford also told Barrera that Mata had threatened him with a baseball bat, but that he had managed to get it away from her.  Weatherford admitted to taking the phone from Mata and hanging it up when she called 911.  He told Barrera that he would voluntarily leave the residence and did not want to press charges against his wife.

According to his offense report, Barrera then had a conversation with Mata. Barrera wrote that Mata told him that Weatherford had pushed her during their argument, causing her to fall and bump her head on a wall. Barrera's report stated that he was able to feel a lump on her head, and that while Mata admitted to striking Weatherford in the face, she said she only threw the glass bowl at him in self-defense. Barrera reported that Mata explained that one of her children came into the room with a baseball bat to defend her, but that she took the bat away from the child and that she never threatened to use the bat against Weatherford. According to the report, Mata told Barrera that she did not want to press charges and that she did not want an incident report filed. Barrera filed a report nonetheless.

Mata disputes Barrera's rendition of the aforementioned events. On appeal, Mata asserts that Barrera refused to talk with her when he was at the couple's home, even though in her deposition she admitted to having certain, limited conversations with Barrera.

The following day, October 26, Weatherford drove Mata to the police station, where she spoke with another officer, Brad Lile, privately in an interview room. According to the report Lile produced regarding the conversation, Mata told him that she did not think that Barrera's report was accurate, and she wanted her side of the story documented. She provided a number of details regarding her fight with her husband, and according to Lile, she admitted throwing the candy dish at Weatherford. According to Lile, Mata told him that Weatherford had never assaulted her before the previous day's argument and that the couple rarely argued. In his report, Lile reported that Mata did not want to press charges, but only wanted to have her account of the incident accurately documented. She said that she intended to seek marriage counseling through her church.

Mata's deposition account of her interview with Lile varies from his report. She denied telling Lile that she threw a candy dish at Weatherford as well as that she told Lile that Weatherford had never assaulted her before. Mata agreed that she never told Lile she wanted to press criminal charges against her husband.

Lile also spoke to Weatherford on October 26; Weatherford explained that he only used force after his wife first attacked him. According to Lile's report, Lile asked the couple if they would be okay going home together, and they both said they would.

On November 12, 2003, Mata and Weatherford each signed a waiver of prosecution, declining to press charges against each other based on the incident on October 25, 2003.

In her deposition, Mata explained that in the following months she had several conversations with members of the police department about her marital problems, although her recollection of those discussions and the dates they occurred was somewhat vague. She told an internal affairs investigator, Sergeant Richard Cuellar, and Chief Ricardo Torres that her husband was still being abusive towards her and her children and that he was hard to live with, and she wanted them to do something about it. She suggested that perhaps Weatherford could be ordered to take a vacation or perhaps receive instruction in anger management. She even suggested that her husband be praised more at work and perhaps named "Officer of the Month," in hopes that such actions would improve his morale. There is no evidence that Mata ever said she wanted to press criminal charges against Weatherford or that she wanted him arrested.

Weatherford filed for divorce on March 24, 2004, but did not move out of the house until May 29, 2004. On May 20, 2004, Mata and Weatherford had a violent struggle over Mata's use of Weatherford's cell phone. During the scuffle, Weatherford allegedly cursed Mata, put his knee on her leg with all his weight,

and bent her pinky finger. According to Mata, this resulted in swelling of her pinky finger and bruises to her arm and thigh.

In response to this incident, Mata left her home and went to her mother's house. There, she called Chief Torres and asked him to talk to Weatherford; the chief said he would. Several hours later, Mata called Chief Torres again, and he told her he was still talking to Weatherford.

Following that incident, Mata alleges that she was unjustifiably stopped on five or more occasions by police officers of the Kingsville Police Department and that Weatherford stalked her in his patrol car. The couple's divorce became final in January of 2005. On September 30, 2005, Mata filed suit against the City of Kingsville as well as Weatherford and Torres, in their official and individual capacities (collectively "Defendants") in the Southern District of Texas. She asserted, inter alia, claims of equal protection violation and excessive force pursuant to 42 U.S.C. § 1983. Mata also asserted a number of state law claims, including intentional infliction of emotional distress. Defendants moved for summary judgment on all of Mata's federal law claims as well as the claim of intentional infliction of emotional distress against Torres. The motion was granted by the district court on August 31, 2006. The district court also dismissed all of Mata's remaining state law claims. Mata filed her notice of appeal; before this Court she is only challenging the grant of summary judgment concerning her "class of one" equal protection claim.

## II. DISCUSSION

A.    Standard of Review

We review the district court's grant of Defendants' motion for summary judgment de novo. See McKee v. City of Rockwall, 877 F.2d 409, 410 (5th Cir. 1989). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "All reasonable doubts and inferences must be resolved in the light most favorable to the non-movant." McKee, 877 F.2d at 410. (internal citation omitted).

## B.    Class of One Claim

To prevail on a "class of one" equal protection claim premised on unequal police protection, a single plaintiff must establish "that an illegitimate animus or ill-will motivated her intentionally different treatment from others similarly situated and that no rational basis existed for such treatment."  Shipp v. McMahon, 234 F.3d 907, 916 (5th Cir. 2000), overruled in part on other grounds by McClendon v. City of Columbia, 305 F.3d 314, 328-29 (5th Cir. 2002) (en banc); see also Lindquist v. City of Pasadena, ___ F.3d ___, 2008 WL 1726173, at *3 n.2 (5th Cir. Apr. 15, 2008).  According to Mata, Defendants should not have been granted summary judgment on her "class of one" equal protection claim because she presented significant evidence that she was intentionally treated differently than non-police officer wives who make domestic violence complaints. Viewing the evidence in a light most favorable to Mata, we conclude that her claim is without merit.

Mata has failed to make out any of the necessary elements of her claim. First, there is no evidence that she was intentionally treated differently from others similarly situated.  During her deposition, Mata offered the experiences of her friend, Anna Lewis, who allegedly received more responsive treatment by the police department when she made a 911 call concerning domestic violence. However, a review of the record reveals that Mata's knowledge of Lewis's experiences with the police department is based on hearsay, not personal knowledge; therefore it is not admissible summary judgment evidence.  See Fowler v. Smith, 68 F.3d 124, 126 (5th Cir. 1995) ("Evidence on summary judgment may be considered to the extent not based on hearsay . . . . "); see also

6

FED. R. CIV. P. 56(e).  The rest of the summary judgment evidence neither establishes that Mata was deprived of equal protection of the law  nor that she was intentionally treated differently than others similarly situated.  If anything, the evidence shows that police officers took steps to protect her, even over her and Weatherford's objections.  For example, even though Weatherford told the dispatcher that "everything was fine" after the interrupted 911 call on October 25, Barrera still went to the couple's home.  And although Mata told Barrera that she did not want a report made of the incident, he made one anyway and documented the lump on her head that she had received during the argument.  In light of this all, Mata has utterly failed to make out this element.

Second, even assuming arguendo that the summary judgment record supported an inference of disparate treatment, there is no evidence that illegitimate animus or ill will motivated the disparity.  While it is certainly conceivable that members of the police department may have harbored ill will towards Mata since Weatherford was employed as an officer of the department, this Court has repeatedly acknowledged that "conclusory statements in an affidavit do not provide facts that will counter summary judgment evidence, and testimony based on conjecture alone is insufficient to raise an issue to defeat summary judgment."  Roberts v. Cardinal Servs., 266 F.3d 368, 376 n.33 (5th Cir. 2002) (internal citation omitted).

And finally, since Mata has failed to prove disparate treatment, she cannot make out the last element of her claim; namely, that there was no rational basis for the difference in treatment.  But, once again, even if she had raised a genuine issue of material fact on disparate treatment, she could not prevail.  The evidence establishes that there would be a rational basis for her differentiated treatment: she requested it.  Instead of asking for the type of assistance a police department is best equipped to provide—arresting someone and initiating criminal charges—she continuously asked for informal measures that she

7

thought would make her husband easier to live with. She made clear to Chief Torres as well as to other members of the police department that she did not want her husband arrested and that she did not want to press charges. Given the considerable amount of discretion police officers are given to resolve domestic disputes, see Shipp, 234 F.3d 914 n.5 ("Because domestic assault cases usually involve parties in volatile intimate or familial relationships, we acknowledge that special law enforcement tactics may be employed in these instances that may be impracticable in other assault cases."), we reject Mata's assertion that the officers here behaved irrationally by working with her, at her own request, to resolve the situation with her husband by not arresting him or bringing criminal charges.

This case is distinguishable from Shipp, where Cherie Shipp made a much stronger showing for her "class of one" claim. Shipp presented evidence which concretely raised the possibility that her mother-in-law's hostility towards her influenced the level of protection she received from the police department, since her mother-in-law was a deputy at the department who was "intimately involved" in the situation that led to the filing of Shipp's lawsuit. 234 F.3d at 916-17. Here, Mata's evidence does not rise to such a level. Accordingly, she has failed to demonstrate that Defendants "deliberately sought to deprive [her] of the equal protection of the laws." See id. at 916 (internal quotation marks and citation omitted).

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.