IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-50183
_____

RICARDO RODRIGUEZ, Individually
and As Next Friend of
Xavier Valenzuela, ET AL

                                        Plaintiffs

BRIDGET VALENZUELA, Individually
and As Next Friend of
Xavier Valenzuela; ARGELIA PEREZ,
Individually and On Behalf of Others
Similarly Situated; PALMIRA GARCIA;
XAVIER VALENZUELA

                                        Plaintiffs-Appellees

                        versus

MIKE NEELEY, Director, Ector County
Adult Probation Office, ET AL

                                        Defendants

MIKE NEELEY, Director, Ector County
Adult Probation Office

                                        Defendant-Appellant

_____

Appeal from the United States District Court
for the Western District of Texas
_____

March 5, 1999

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

    A state employee of a county probation department appeals
denial of the district court's partial rejection of his defense of
qualified immunity to claims that plaintiffs were

unconstitutionally detained in the course of a sting operation carried out with federal immigration officials and calculated to gather felons illegally in the country.

I

Mike Neeley is the director of the Ector County Adult Community Supervision and Corrections Department. In the early fall of 1995, INS Agent Villareal asked Neeley for a list of all foreign-born probationers currently under its supervision. Agent Villareal wanted to investigate their alien status and criminal convictions. Neeley furnished a list of 200 foreign-born probationers.

In late fall 1995, INS Agents Villareal and Woodward met with Neeley to discuss 42 of the listed probationers. INS agents wanted to question them at their homes, accompanied by Border Patrol agents and CSCD officers. Neeley declined, fearful of the dangers of such an effort. It is undisputed that Neeley and CSCD officers do not make arrests and are not trained to do so. Neeley volunteered to ask the targeted probationers to report to the CSCD office at a specified date and time with the understanding that the state would take no action against any who did not report.

Neeley then drafted a letter in English, and Agent Villareal translated the draft into Spanish. The letters were written on Ector County letterhead, signed by Neeley, and on November 30, 1995, mailed to the probationers advising them to report to the CSCD on December 13, 1995, to discuss the terms of their probation.

2

On December 13, 1995, at approximately 10:00 a.m., 26 of the 42 targeted probationers arrived at the CSCD. Plainclothes INS agents and a sheriff's deputy positioned themselves at the doors. Four persons, three adults and a child, who were not probationers accompanied some of the targeted probationers. These bystanders, Bridget Valenzuela, her four-year old son Xavier, Argelia Perez, and Palmira Garcia, were citizens of the United States.

After the doors were closed, Valenzuela sought permission to leave, asserting that she and her son were citizens and that she wished to contact an attorney for her husband. INS agents did not immediately accept her explanation and none of the four were allowed to leave immediately. Rather, according to Valenzuela, it took approximately an hour for the INS to take the proper persons into custody, accept their claimed identity, and allow them to leave.

The four bystanders sued Neeley for money damages under 42 U.S.C. § 1983, asserting that by not allowing them to leave immediately, defendants deprived them of their Fourth Amendment rights. The district court granted Neeley's motion for summary judgment, dismissing the claims to money damages, finding Neeley was entitled to qualified immunity. The district court later modified its ruling, denying Neeley qualified immunity to the conspiracy claim, but adhering to its earlier ruling in all other respects. The district court was apparently persuaded that whether the detentions should be attributed to Neeley as a member of the

3

claimed conspiracy presented genuine issues of material fact, that is, whether Neeley's actions in coordinating with other county officials, the Border Patrol, and the INS caused the plaintiffs to be illegally detained.

Neeley argues to this court that plaintiffs failed to state a claim, and in any event the district court erred in denying summary judgment.

## II

A denial of qualified immunity is immediately appealable under the collateral order doctrine, when based on an issue of law. See Cantu v. Rocha, 77 F.3d 795, 802 (5th Cir. 1996) (citing Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). After giving plaintiffs the benefits of all disputed questions of fact, determining from the summary judgment record whether the bystanders' claim under § 1983 against Neeley may proceed is a question of law. See Siegert v. Gilley, 500 U.S. 226, 232 (1991). We have jurisdiction over this interlocutory appeal.

## III

The bystanders allege, under § 1983, that Neeley conspired with the other defendants to violate their Fourth Amendment rights by illegally detaining them at the CSCD. The bystanders argue that Neeley's conduct in coordinating the "meeting" at the CSCD office was objectively unreasonable in light of the bystanders' clearly established Fourth Amendment right to be free from an unreasonable seizure.

4

Neeley does not dispute that the bystanders were detained and concedes that in the procedural posture of this case we should assume the detentions violated the Fourth Amendment. It is undisputed that Neeley cooperated with the INS by (1) providing them the list of foreign-born probationers; (2) drafting, signing, and mailing the letters to the targeted probationers; and (3) allowing the INS to use the probation office for the operation. Neeley argues that by the summary judgment evidence, viewed in the light most favorable to the bystanders, he did no more; that his acts will not support a finding that he was a member of any conspiracy.

The district court found that the affirmative acts Neeley took, such as sending of letters to probationers and permitting the INS to use the CSCD office, were objectively reasonable and barred by Neeley's qualified immunity. According to the district court: "The use of the probation system to require resident alien probationers to appear at a county facility for INS purposes and the letters circulated to probationers were not actions that injured the bystander citizens." As we observed, the district court also concluded that there was no evidence that Neeley or other CSCD officials directly supervised or participated in the detention or questioning of the bystanders. We have in other contexts observed that, "[o]nly if [the] state action is determined not to be objectively reasonable should [this court] look to whether the officer's actions were taken pursuant to a conspiracy."

5

See Pfannstiel v. City of Marion, 918 F.2d 1187 (5th Cir. 1990), abrogated on other grounds by Martin v. Thomas, 973 F.2d 449 (5th Cir. 1992).

Plaintiffs persist that the INS detention of the bystanders is attributable to Neeley as a member of a conspiracy. Plaintiffs must develop facts from which a trier of fact could reasonably conclude that Neeley agreed with others to commit an illegal act and that a deprivation of constitutional rights occurred. See Cinel v. Connick, 15 F.3d 1338, 1343 (5th Cir.), cert. denied, 513 U.S. 868 (1994). A conclusory allegation of conspiracy is insufficient. See McAfee v. 5th Circuit Judges, 884 F.2d 221 (5th Cir. 1989), cert. denied, 493 U.S. 1083 (1990). Specifically, plaintiffs must identify an illegal objective of the agreement among INS agents and Neeley. Giving plaintiffs all inferences from the summary judgment record, a trier of fact could not reasonably conclude that there was a scheme to deprive the bystanders of their constitutional rights by detaining them at the CSCD office. The target of the coordinated plan of Neeley and the other defendants was aliens with felony convictions, not the bystanders. No trier of fact could reasonably conclude from the summary judgment record that Neeley conspired to violate the bystanders' constitutional rights.

Relatedly, plaintiffs appear to contend that the conspiracy may have been to achieve lawful objectives but by unlawful means. Yet the detentions of the bystanders complained of were neither

6

necessary nor anticipated, at least to a level of certainty to make the detentions a part of the "conspiracy" or to the meet the certainty requirement of qualified immunity, that "a reasonable official would understand <u>that</u> <u>what</u> <u>he</u> <u>is</u> <u>doing</u> violates that right."  <u>See</u> <u>Anderson v. Creighton</u>, 483 U.S. 635, 639-640 (1987). We are persuaded that the district court erred in denying Neeley's motion for summary judgment.

REVERSED.