UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 00-41436

_____

MARIAN HILL,

Plaintiff-Appellee,

versus

CITY OF SEVEN POINTS, Et Al.,

Defendants,

CITY OF SEVEN POINTS; TERESA DRUM, Individually and in official
capacity; ROGER ALLEN, Individually and in official capacity;
C.W. DANIEL, Individually and in official capacity; RANDY
WHITEHURST, Individually and in official capacity; ANNIE
LONGACRE, Individually and in official capacity; TOMMIE TAYLOR,
Individually and in official capacity; DON ALLSUP, Individually
and in official capacity; MARY REID, Individually and in official
capacity; MARIE DAVIS, Individually and in official capacity;
LYNN CLOWDUS, Individually and in official capacity; FOREST
EVERITT, Individually and in official capacity; CLAUDETT ALLSUP,
Individually and in official capacity; GERALD TAYLOR,
Individually and in official capacity,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(6:98-CV-687)

_____

January 17, 2002

Before BARKSDALE and STEWART, Circuit Judges, and ROSENTHAL,

District Judge.[1]

_____

[1]United States District Judge for the Southern District of
Texas, sitting by designation.

RHESA HAWKINS BARKSDALE, Circuit Judge:[2]

For this interlocutory appeal from the summary judgment denials of, *inter alia*, prosecutorial, qualified, and sovereign immunity, at issue is: (1) whether jurisdiction exists to review each immunity denial; and (2) if it does exist, whether there is immunity from Plaintiff's claims that (a) her selective prosecution and a zoning variance denial denied her equal protection; (b) the variance denial, jury rigging in her criminal trial, and a conflict of interest of the prosecutor in that trial denied her due process; and (c) Defendants conspired to effect these claimed civil rights violations. We **AFFIRM in Part, REVERSE in Part,** and **REMAND**.

## I.

This action is based on the charge by Plaintiff Marian Hill (Hill), the former Mayor of Defendant City of Seven Points, Texas, that the individual Defendants, all but one of whom were city officials, conspired to "run her out of town", resulting in her removal from office and in criminal convictions for zoning violations. (As discussed *infra*, the convictions, while on appeal, were dismissed recently.) The following underlying facts are primarily based on Hill's affidavit in opposition to summary judgment (affidavit). As discussed *infra*, for purposes of this

---

[2]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

2

interlocutory appeal, we must *assume* the facts stated in her affidavit are true.

In May 1997, Hill's former husband, Charles Hill, represented by the law firm of Drum and Waldie, filed for divorce; shortly thereafter, he attended meetings during which he and Defendant Judge Ronald Waldie, Defendant City Prosecutor Teresa Drum, Defendant Chief of Police C.W. Daniel, and Defendant City Council members formulated the above described scheme.

Pending the divorce, a temporary order allowed Hill to reside in community property near the marital residence. On 12 November 1997, Hill applied to the Defendant City's Board of Adjustments for a zoning variance for that property. The variance was requested because she was in violation of City Ordinance 125, the property being zoned only for business use.

Persons who lived within 200 feet of the property received notice of the variance application; and all of the responses by surrounding landowners were positive, except that of Charles Hill, who lived outside that radius. The Board denied Hill's request, but instructed her to provide documentation of the temporary order authorizing her living in the property.

Despite Hill's complying with this request, the Board informed her it would not reconsider her application until her divorce was final. Hill *asserts* (but offered no evidence, as discussed *infra*)

3

that no one has ever been denied a variance to live in property zoned only for business use.

On 17 November 1997, five days after Hill applied for the variance, the City Council removed Hill as Mayor because of (1) her zoning violation and (2) purchasing matters concerning a copy machine lease and a pager. Hill did not appeal her removal. Instead, she sought a writ of mandamus in state court. The court denied relief, ruling: the removal-decision was not arbitrary and capricious; the City Council properly conducted the removal proceeding; and Hill was not deprived of due process under either the Texas or United States Constitution. Hill did not appeal that denial.

On 2 February 1998, Defendant Roger Allen, Building and Code Inspector for the Defendant City, cited Hill for several Ordinance 125 violations. Approximately two weeks later, on 18 February, Defendant Police Chief Daniel filed 98 complaints against Hill for living in a business zone; approximately two months later, on 16 April, Allen filed 98 amended complaints for the same violation. No person has ever been prosecuted for violating Ordinance 125; and before, during, and after Hill was cited, at least 12 others, including Defendant City Council member Randy Whitehurst, who lived next to the property in question, were also residing in the same business zone in violation of Ordinance 125, but were not prosecuted.

4

Hill's trial for the first ordinance violations began on 23 March 1998 (prior to the 16 April amended complaints), with Drum as prosecutor for the City and Ronald Waldie as municipal judge. Hill requested that Judge Waldie recuse himself because the Judge: was a member of the law firm that represented Charles Hill in the Hills' divorce proceeding; and had represented him in an earlier divorce. Judge Waldie denied the request. Hill was convicted and fined $1,038 despite the ordinance's limiting the fine to $200.

The remaining violations were consolidated, with a second trial beginning on 17 August 1998. Before trial, Charles Hill, Judge Waldie, Drum, Police Chief Daniel, Council member Whitehurst, and other City Council members pre-selected a jury list for the trial, rather than employing the usual random method (jury rigging). The list included spouses and relatives of Defendants and members of the Board of Adjustments. When one of the potential jurors sought to be excused from jury duty, Judge Waldie urged the prospective juror to stay so the juror could "get back at Marian". ("Marian" is Hill's first name.)

After trial began, Judge Waldie declared a mistrial; according to Defendants, Hill elected to proceed without a jury. Judge Waldie found her guilty and fined her $13,700. Hill appealed her convictions. According to the parties for the appeal at hand, both criminal actions were dismissed on 4 October 2001 on motion of the prosecution, two days after this case was argued here.

5

Hill filed this action against Charles Hill, the City, and the following persons in their official and individual capacities: Judge Waldie; City Prosecutor Drum; Police Chief Daniel; Building and Code Inspector Allen; City Council members Whitehurst, Annie Longacre, Tommy Taylor, Gerald Taylor, and Don Allsup; and Board of Adjustments members Mary Reid, Lynn Clowdus, Forest Everitt, Marie Davis, and Claudett Allsup. Under 42 U.S.C. § 1983, Hill claimed violations of her rights under the Fourth, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution. And, as discussed *infra*, she claimed a conspiracy among Defendants to carry out these claimed civil rights violations. (Hill also presented state law claims for intentional infliction of emotional distress, negligence, and malicious abuse of process. In her amended complaint, however, Hill did not assert these claims.)

This action was referred to a magistrate judge. Defendants moved for summary judgment, claiming, *inter alia*, judicial, prosecutorial, qualified, and sovereign immunity.

Summary judgment was granted Judge Waldie on the basis of judicial immunity. Hill's claims against Judge Waldie were severed, resulting in a final judgment in his favor. Summary judgment was denied on the City's sovereign immunity claim. The district court concluded genuine issues of material fact exist on whether Defendants acted pursuant to an official policy or custom of the City.

Summary judgment was denied on Drum's prosecutorial immunity claim. The district court concluded a genuine issue of material fact exists on whether she selectively prosecuted Hill.

And, summary judgment was denied on the individual Defendants' qualified immunity claim. The district court concluded: Hill had alleged the violation of clearly established constitutional rights; and, genuine issues of material fact exist on whether Defendants' conduct was objectively reasonable in the light of clearly established law.

As noted, Judge Waldie was dismissed, with the claims against him severed. The remaining Defendants, with the exception of Charles Hill, appealed. Our court remanded, because it was not clear we had jurisdiction, the magistrate judge's referral order not having been signed by the district judge. *See **Hill v. City of Seven Points***, 230 F.3d 167, 170 (5th Cir. 2000).

On remand, the district court again referred the case to the magistrate judge. Defendants' motion for reconsideration of the summary judgment ruling was denied, the magistrate judge adopting his previous ruling.

## II.

The Appellant Defendants (Charles Hill is *not* an Appellant) again bring an interlocutory appeal, maintaining the district court erred: in denying prosecutorial, qualified, and sovereign immunity; in concluding a genuine issue of material fact exists for

7

Hill's conspiracy claim; and in denying Defendants' motion to strike Hill's affidavit.

A summary judgment ruling is reviewed *de novo*, applying the identical standard used by the district court. *E.g.,* ***Stewart v. Murphy***, 174 F.3d 530, 533 (5th Cir.), *cert. denied*, 528 U.S. 906 (1999). Judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c).

"We view the pleadings and summary judgment evidence in the light most favorable to the nonmovant." ***Stewart***, 174 F.3d at 533. The non-movant, however, "may not rest upon the mere allegations or denials of the adverse party's pleading, but the [non-movant's] response, *by affidavits or as otherwise provided in this rule*, must set forth [identify] specific facts [evidence] showing there is a genuine issue for trial". FED. R. CIV. P. 56(e) (emphasis added).

As stated in Rule 56(e), those "specific facts" — summary judgment evidence — must be presented through the vehicles for doing so identified in Rule 56(c), such as affidavits or depositions, and must be contained in the summary judgment record. *E.g.,* ***Jones v. Sheehan, Young, & Culp, P.C.***, 82 F.3d 1334, 1338 (5th Cir. 1996) ("the non-movant must go beyond the pleadings and *by [his] own affidavits, or by the depositions, answers to*

8

*interrogatories, and admissions on file*, designate specific facts showing that there is a genuine issue for trial") (internal quotation marks omitted; alteration in original; emphasis added; quoting ***Celotex Corp. v. Catrett***, 477 U.S. 317, 324 (1986)).

Accordingly, as discussed *infra*, statements in a response in opposition to summary judgment do not constitute "evidence" for summary judgment purposes. *See, e.g.,* ***Skotak v. Tenneco Resins, Inc.***, 953 F.2d 909, 915 (5th Cir.) (in opposing a motion for summary judgment, the non-movant "must, *either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record*, set out specific facts showing that a genuine issue exists") (emphasis added and emphasis in original; internal quotation marks omitted), *cert. denied*, 506 U.S. 832 (1992).

## A.

Generally, a summary judgment denial is not a final order vesting appellate jurisdiction under 28 U.S.C. § 1291. *See*, *e.g.,* ***Turner v. Houma Mun. Fire & Police Civil Serv. Bd.***, 229 F.3d 478, 482 (5th Cir. 2000). Therefore, before the immunity issues are considered, jurisdiction for this interlocutory appeal must be addressed. As discussed below: jurisdiction exists to consider the denial of prosecutorial and qualified, but not sovereign, immunity, with our review being limited; and jurisdiction also exists to consider the related conspiracy and evidentiary issues.

9

1.

"An exception to th[e] rule [that we lack jurisdiction over a summary judgment denial] exists when the summary judgment motion is premised on a claim of absolute or qualified immunity". *Id.* at 482 (citing **Mitchell v. Forsyth**, 472 U.S. 511, 526 (1985)). This exception is grounded in the collateral order doctrine, which permits appeal of a non-final order if it is "within 'that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated'". **Mitchell**, 472 U.S. at 524-25 (quoting **Cohen v. Beneficial Indus. Loan Corp.**, 337 U.S. 541, 546 (1949)). Such appellate review is premised upon the reality that, in some instances, if an order is not reviewed before the issuance of a final judgment, the practicality of reviewing that order is lost. **Mitchell**, 472 U.S. at 525; *see* **Stack v. Boyle**, 342 U.S. 1, 12 (1951).

Prosecutorial immunity is a form of absolute immunity. *See* **Imbler v. Pachtman**, 424 U.S. 409, 427 (1976); **Prince v. Wallace**, 568 F.2d 1176, 1178 (5th Cir. 1978). Prior to final judgment, we can review a prosecutorial immunity denial because "the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action". **Mitchell**, 472

10

U.S. at 525. Similarly, jurisdiction to review a qualified immunity denial is based on "the recognition that qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct [and] that a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated". *Id.* at 527-28.

Along this line, an absolute immunity denial is appealable before final judgment only if the appeal is "based on issues of law and concern[s] only [the] application of established legal principles". *Turner*, 229 F.3d at 482 (internal quotation marks omitted); *see Skelton v. Camp*, 234 F.3d 292, 296 (5th Cir. 2000) ("We have jurisdiction over an interlocutory appeal of the denial of summary judgment involving absolute immunity where there are no material facts in dispute.").

Likewise, the "denial of summary judgment on qualified immunity is ... immediately appealable, even when a genuine issue of material fact exists, when the order determines a question of law". *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 324 (5th Cir. 1998). Accordingly, for qualified immunity, "the appealable issue is a purely legal one: whether the facts alleged (by the plaintiff, or, in some cases, the defendant) support a claim of violation of clearly established law". *Mitchell*, 472 U.S. at 528 n.9. "Assumed facts are treated as undisputed facts in this analysis .... [and] we retain interlocutory jurisdiction to 'take,

11

as given, the facts that the district court assumed when it denied summary judgment,' and to determine whether those facts are sufficient to state a claim under clearly established law". *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 531 (5th Cir. 1997) (citation omitted) (quoting *Johnson v. Jones*, 515 U.S. 304, 319 (1995)); *see Kelly v. Foti*, 77 F.3d 819, 821 (5th Cir. 1996) ("Denial of summary judgment on the ground of qualified immunity is immediately appealable to the extent that the question on appeal is whether the undisputed facts amount to a violation of clearly established law.").

In sum, our jurisdiction over an interlocutory appeal from a summary judgment denial of absolute or qualified immunity is limited to one which "turns upon an issue of law and not of fact". *Stem v. Ahearn*, 908 F.2d 1, 3 (5th Cir. 1990), *cert. denied*, 498 U.S. 1069 (1991). Therefore, we do not review whether the issues of fact are "genuine"; we do review whether they are "material". *See Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 633-34 (5th Cir. 1999) (prior to final judgment, no appellate jurisdiction for whether issue of fact is genuine; court of appeals has jurisdiction to review whether fact issue is material, this being a legal issue). *See, e.g., Jones v. Collins*, 132 F.3d 1048, 1051 (5th Cir. 1998) (summary judgment denial not immediately appealable where movant "merely disputes the district court's determination that the nonmoving party may be able to prove at

12

trial a fact that is material to the appellant's entitlement to qualified immunity"); *Naylor v. State of La. Dep't of Corr.*, 123 F.3d 855, 857 (5th Cir. 1997) (court of appeals has "jurisdiction over law-based denials of qualified immunity, but [does] not have jurisdiction over a genuine-issue-of-fact-based denial").

2.

Jurisdiction is lacking over the sovereign immunity denial. Relying upon *Swint v. Chambers County Comm'n*, 514 U.S. 35 (1995), Defendants maintain our jurisdiction over the prosecutorial and qualified immunity denials provides "pendent" jurisdiction over the sovereign immunity denial; as discussed *infra*, they claim the issues are "inextricably intertwined". In *Swint*, after a raid by city and county law enforcement entities, plaintiffs filed a § 1983 action against the city and county and their officials. Defendants moved for summary judgment, the individuals claiming qualified immunity; the city and county, sovereign immunity. The city contended it could not be held liable under a *respondeat superior* theory of liability for a § 1983 violation, *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978), while the county maintained it had no § 1983 liability because its sheriff was not a county policy maker.

The district court denied qualified and sovereign immunity, concluding, *inter alia*: the city had failed to allege that the police chief was not a city policy maker; and the court was

13

"'persuaded ... that [the sheriff] may have been the final decision-maker for the County'". *Swint*, 514 U.S. at 39.

The Eleventh Circuit held the qualified immunity denial appealable. It held the sovereign immunity denial not appealable as a collateral order, but that, for the county, it was appropriate to exercise "pendent" appellate jurisdiction over the conclusion that the sheriff was a county policy-maker. On the other hand, the court declined to exercise such jurisdiction over the sovereign immunity denial for the city, because the district court had not ruled on whether the police chief was a city policy-maker.

The Supreme Court reversed, holding the Eleventh Circuit did not have jurisdiction to consider sovereign immunity. The Court reasoned that, unlike qualified immunity, sovereign immunity is not immediately appealable under the collateral order doctrine because "an official's qualified immunity is 'an *immunity from suit* rather than a mere defense to liability; and like absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial'". *Id*. at 42 (emphasis in original) (quoting *Mitchell*, 472 U.S. at 526). The Court then determined that the sheriff's not-a-county-policy-maker assertion was not an immunity from suit, but, rather, a "defense to liability". *Id.* at 43 (internal quotation marks omitted).

Regarding the Eleventh Circuit's exercising pendent jurisdiction, the Court rejected it, on the basis that: 28 U.S.C.

14

§ 1292(b) requires district and circuit court approval of certain types of interlocutory appeals; and if a circuit court considers an issue that does not satisfy the collateral order doctrine, "the two-tiered arrangement § 1292(b) mandates would be severely undermined" because approval of the interlocutory appeal by the district court would be irrelevant. *Id.* at 47.[3]

The Court, however, left open the possibility that, where a district court's summary judgment denial of sovereign immunity is "inextricably intertwined with that court's decision to deny the individual defendants' qualified immunity motions, or that review of the former decision was necessary to ensure meaningful review of the latter", jurisdiction may exist. *Id.* at 51. Nevertheless, the Court determined that such was not the situation in *Swint,* because qualified immunity depended upon whether the individual defendants violated a clearly established constitutional right, and sovereign immunity turned on "the allocation of law enforcement power in Alabama". *Id.*

---

[3]Of course, the result is not the same with respect to a State's assertion of Eleventh Amendment immunity. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139 (1993), holding: denial of Eleventh Amendment immunity is a conclusive determination that a State has no right not to be subjected to suit in federal court; and the value of Eleventh Amendment immunity is lost if a State is required to stand trial. *Id.* at 145. Furthermore, the Court reasoned that a claim of Eleventh Amendment immunity implicates a fundamental constitutional protection, the resolution of which generally has no relationship to the merits of the underlying action. *Id.*

15

Accordingly, Defendants assert that the sovereign immunity issue is "inextricably intertwined" with that for qualified immunity. In considering whether qualified and sovereign immunity defenses are so intertwined, our court has looked to whether each claim has "unique elements and relevant facts" and was considered separately by the district court. *Gros v. City of Grand Prairie, Tex.*, 209 F.3d 431, 437 (5th Cir. 2000).

For example, qualified immunity for the individual Defendants turns on whether Hill has alleged the violation of a clearly established constitutional right and whether Defendants' conduct was objectively unreasonable in the light of clearly established law. *See* *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Sovereign immunity, however, turns on whether Hill has established a constitutional deprivation resulting from an official policy or custom of the City. *See* *Monell*, 436 U.S. at 694. Defendants have not demonstrated how, in this case, the resolution of the issues regarding qualified and sovereign immunity are intertwined, much less "inextricably" intertwined. In addition, the district court delineated consideration of qualified immunity from sovereign immunity.

Furthermore, our court has held that such pendent jurisdiction should be "exercised only in rare and unique circumstances". *Gros*, 209 F.3d at 436 (internal quotation marks omitted); *see* *Woods v. Smith*, 60 F.3d 1161, 1166 n.29 (5th Cir. 1995), *cert. denied*, 516

16

U.S. 1084 (1996).  Defendants have not addressed, much less demonstrated, how this condition is met.  *See* **Woods**, 60 F.3d at 1166 n.29 ("defendants have not advanced reasons for review more compelling than those rejected by the Court in **Swint**").

Accordingly, we lack jurisdiction over the sovereign immunity denial.  Declining to exercise such jurisdiction concurrently with considering qualified and prosecutorial immunity will not defeat totally the purpose of prosecutorial and qualified immunity; the existence of sovereign immunity *vel non* does *not* determine whether the other Defendants, in their individual capacities, will be subjected to trial, but instead determines whether the City and the other Defendants, in their official capacities, will.  *Compare* **Morin v. Caire**, 77 F.3d 116, 119-20 (5th Cir. 1996) (court reviewed district court's rulings on state law claims along with its review of the denial of qualified immunity as district court's state law rulings would subject the defendants, individually, to trial, defeating the purpose of qualified immunity).

3.

To determine whether we have jurisdiction over the qualified immunity denial for the conspiracy claim, we must first determine the type of claim presented.  Hill cites 42 U.S.C. § 1985 (conspiracy to interfere with civil rights) in the jurisdiction section of her amended complaint; but, in the portion discussing the conspiracy, she cites § 1983, not § 1985.  In addition, in her

17

response in opposition to summary judgment, she terms this a "section 1983 conspiracy claim". Accordingly, Hill asserts a conspiracy claim under § 1983, not § 1985.

In *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187-88 (5th Cir. 1990), *abrogated on other grounds*, *Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992), our court considered how qualified immunity bears on a § 1983 conspiracy claim, noting that the claim is simply "the legal mechanism through which to impose liability on each and all of the Defendants without regard to the person doing the particular act". *Id*. at 1187. Accordingly, our court was faced with "whether defendants who are entitled to assert qualified immunity may be personally liable based on a section 1983 conspiracy theory when the state action alleged to have violated section 1983 has been determined to be objectively reasonable in [the] light of clearly established law". *Id*.

Our court held: "In a section 1983 action claiming that plaintiff was injured by state action as the result of a conspiracy which includes private persons, the defense is still available to the qualifiedly immune actor." *Id*. *Pfannstiel* was, as here, an interlocutory appeal from a qualified immunity denial; and our court ruled that, in reviewing such denial regarding conspiracy, a court should "first ... determine the objective reasonableness of the state action which is alleged to have caused harm to the plaintiff". *Id*. If the action was not objectively reasonable, a

18

court should only then "look to whether the officer's actions were taken pursuant to a conspiracy".

In *Hale v. Townley*, 45 F.3d 914 (5th Cir. 1995), another interlocutory appeal from a qualified immunity denial, our court, after recognizing the *Pfannstiel* holding, held: where all defendants were entitled to qualified immunity from the underlying § 1983 claims, "the conspiracy claim [was] not actionable". *Id*. at 920-21. Accordingly, our court reversed the qualified immunity denial for the § 1983 conspiracy claims. *Id*. at 921. *See Rodriguez v. Neeley*, 169 F.3d 220, 222-23 (5th Cir. 1999) (reversing, on interlocutory appeal, a qualified immunity denial from a § 1983 conspiracy claim).

Under the holding in *Hale*, Defendants are entitled to qualified immunity from the § 1983 conspiracy claim if they are entitled to qualified immunity from the underlying § 1983 claims. Therefore, we have jurisdiction to consider the qualified immunity denial for Hill's § 1983 conspiracy claim. Again, our jurisdiction extends only to the extent that the denial turns on an issue of law and not one of fact. *See Hare*, 135 F.3d at 324.

4.

As for jurisdiction *vel non* over the evidentiary ruling on Hill's affidavit, *Mersch v. City of Dallas, Tex.*, 207 F.3d 732, 734-35 (5th Cir. 2000), likewise involved an interlocutory appeal of a qualified immunity denial where an evidentiary ruling was

19

challenged.  There, the district court admitted the plaintiff's post-hypnosis deposition testimony, the only evidence linking the defendants to her injuries.  In the deposition, the plaintiff recounted events she "remembered" only by virtue of having undergone hypnosis.  *Id*.

Regarding jurisdiction over the evidentiary issue, our court stated:

> [W]e must ascertain whether [the plaintiff's] post-hypnosis testimony embodies admissible facts at all.  This is because Rule 56 states that a court may consider only admissible evidence in ruling on a summary judgment motion.  Where, as here, *the admissibility of particular evidence is critical to a summary judgment founded on qualified immunity*, this court has not hesitated to review the admissibility of the evidence on appeal.

*Id*.  (internal citations omitted; emphasis added).  For this proposition, *Mersch* cited *Hayter v. City of Mount Vernon*, 154 F.3d 269, 273-74 (5th Cir. 1998), which held, on interlocutory appeal of a qualified immunity denial, that the district court did not err in admitting an affidavit.

Accordingly, we have jurisdiction over Defendants' appeal of the admission of Hill's affidavit only to the extent the affidavit was "critical" to the qualified immunity denial.  Our review of the district court's opinion reveals that it relied heavily upon Hill's statements in her affidavit.  For example, it is critical to her selective prosecution claim because it was the only evidence that no other person had been prosecuted for an Ordinance 125 violation.

20

Because the affidavit was critical to the immunity denials, there is jurisdiction over Defendants' appeal from the denial of their motion to strike the affidavit.

B.

The evidentiary issue regarding Hill's affidavit is a gateway to those on immunity. Defendants claim that a "quick reading of [the affidavit] shows that it is filled with hearsay, speculation, conclusory statements, and opinions which the affiant is not qualified to render." "For our *de novo* review of a summary judgment, we still apply the manifest-error standard of review to the district court's evidentiary rulings." **Love v. Nat'l Med. Enters.**, 230 F.3d 765, 775 (5th Cir. 2000); *see* **Mersch**, 207 F.3d at 735; **Hayter**, 154 F.3d at 273-74.

In their initial brief, Defendants do not identify the statements to which they object or why any specific statements are not admissible. Where an issue is not sufficiently briefed, it is considered waived. *E.g.,* **McKethan v. Tex. Farm Bureau**, 996 F.2d 734, 739 n.9 (5th Cir. 1993), *cert. denied*, 510 U.S. 1046 (1994).

In an attempt to remedy this failure, Defendants state in their reply brief that they "stand on their motion to strike" filed in district court. It goes without saying that this attempt is not sufficient; "[a]n appellant abandons all issues not raised *and argued* in its *initial* brief on appeal". **Webb v. Investacorp, Inc.**, 89 F.3d 252, 257 n.2 (5th Cir. 1996) (internal quotation marks

21

omitted; alteration in original; first emphasis added). Moreover, no authority need be cited for the rule that, on appeal, a party cannot simply reference positions taken in district court; they must be briefed here.

C.

A prosecutor is entitled to absolute immunity for acts occurring within the scope of her duties as prosecutor. *Imbler*, 424 U.S. at 427. This includes her "initiating prosecution and carrying [a] criminal case through the judicial process". *Young v. Biggers*, 938 F.2d 565, 569 (5th Cir. 1991); *see* *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 637 (5th Cir.) (prosecutor is absolutely immune for initiation and pursuit of prosecution or when "conduct is 'intimately associated with the judicial phase of the criminal process'"), *cert. denied*, 531 U.S. 871 (2000). Accordingly, as long as the challenged actions are within this scope, immunity attaches, even where the prosecutor acts "maliciously, wantonly or negligently". *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987) (internal quotation marks omitted); *see also* *Kerr v. Lyford*, 171 F.3d 330, 337 (5th Cir. 1999) (prosecutorial immunity extends even to an action that "'was in error, was done maliciously, or was in excess of his authority'"). In assessing whether Drum's actions fall within her duties as prosecutor, we look to "'the nature of the function performed, not the identity of the actor who performed it'". *Thomas v. City of*

22

*Dallas*, 175 F.3d 358, 362 (5th Cir. 1999) (quoting *Imbler*, 424 U.S. at 431).

### 1.

For the selective prosecution claim, the prosecutorial immunity denial was based on the existence of genuine issues of material fact. As noted, we do not review the genuineness dispute, only whether such facts are material. In other words, taking Hill's selective prosecution factual allegations as true, we must determine whether Drum is entitled to immunity as a matter of law.

As discussed earlier, Drum is entitled to absolute immunity for her ultimate decision to prosecute Hill and for continuing that prosecution. The prosecution of one, but not another, person for a particular crime, obviously, implicates the decision to initiate the prosecution against that defendant, as well as the decision to continue to press the prosecution. Accordingly, any selective prosecution would have occurred within the scope of Drum's duties as prosecutor and, therefore, she is absolutely immune in her individual, but not official, capacity from Hill's selective prosecution claim. *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 466-67 (5th Cir. 1999) (prosecutorial immunity not available in official capacity law suit against prosecutor).

### 2.

Drum maintains that "every action of the prosecutor challenged ... in the [district court] was within the scope of her duties of

23

prosecutor". Although the district court denied Drum prosecutorial immunity on the selective prosecution claim, it did not rule on such immunity from any of Hill's other claims.

For those other claims over which we have jurisdiction, only two implicate Drum's personal involvement; both involve due process. The first claim concerns Drum's serving as prosecutor and Charles Hill's divorce attorney, as well as her practicing law with Judge Waldie (multi-capacity role); the second claim is that Drum was involved in the alleged jury rigging. Accordingly, we must determine whether these alleged actions occurred within the scope of Drum's prosecutorial duties.

a.

In regard to Drum's multi-capacity role, our court has considered whether a prosecutor's conflict of interest can prevent prosecutorial immunity in the context of a § 1983 claim. *Brummett v. Camble*, 946 F.2d 1178 (5th Cir. 1991), *cert. denied*, 504 U.S. 965 (1992). The *Brummett* plaintiff had been charged with removing property with the intent to hinder a bank's enforcing its security interest. The charges were dismissed; and, among others, the county prosecutors were sued for malicious prosecution. In contesting prosecutorial immunity, the plaintiff maintained that, because the prosecutors were stockholders, and in one case a board member, of the bank, a conflict of interest defeated immunity.

24

This contention was rejected. To allow a prosecutor's conflict of interest to defeat prosecutorial immunity would defeat the purpose for such immunity, because it is granted "to avoid deflecting the prosecutor's energies from his public duties and to encourage the independent exercise of judgment required by his office". *Id.* at 1181 (citing *Imbler*, 424 U.S. at 425).

Accordingly, Drum is entitled to absolute immunity in her individual capacity for this due process claim. It is only because Drum served as prosecutor that such a claim arguably arises. Therefore, the claim is predicated upon her service — and thus her acts — as prosecutor, for which she is immune.

### b.

At issue next is whether Drum's participation in the claimed jury rigging likewise occurred within the scope of her prosecutorial duties. Again, "absolute immunity is justified and defined by the governmental functions it protects and serves, not by the motives with which a particular officer performs those functions". *Brummett*, 946 F.2d at 1181. Therefore, we must determine whether Drum was performing the functions of a prosecutor during the jury rigging. This depends upon whether the challenged conduct is "intimately associated with the judicial phase of the criminal process". *Id*. (internal quotation marks omitted).

While not in the context of a prosecutor's participation in formulating a list of pre-selected jurors, this court has

25

considered whether a prosecutor had absolute immunity for allegedly altering a trial transcript. *See* **Slavin v. Curry**, 574 F.2d 1256, 1264-65 (5th Cir. 1978), *overruled on other grounds*, **Sparks v. Duval County Ranch Co., Inc.**, 604 F.2d 976, 978 & n.2 (5th Cir. 1979), *cert. denied*, 449 U.S. 1021 (1980). In that § 1983 action, the plaintiff claimed he had been framed in a prosecution for indecency with a child. When the plaintiff appealed his conviction, the prosecutor allegedly participated in the alteration of the trial transcript "to reflect a stronger case for the prosecution and to delete testimony favorable to" the plaintiff. **Slavin**, 574 F.2d at 1260. Despite the alleged alterations, the plaintiff's conviction was vacated due to a flawed indictment. **Id**.

In the ensuing § 1983 action, the court concluded that, while the prosecutor was entitled to absolute immunity concerning his presentation of evidence to the jury and his request that the plaintiff's bond be cancelled, the prosecutor was not entitled to immunity concerning the alleged transcript-alteration because a prosecutor's duties do not extend to "supervision of the trial transcript". **Id**. at 1264.

This claim is analogous to **Slavin;** prosecutorial duties do not extend to circumventing the random selection of jurors in order to assist in having a jury favorable to the prosecution. Accordingly, Drum is *not* entitled to prosecutorial immunity for this due process claim.

26

Whether the individual Defendants are entitled to qualified immunity is decided pursuant to a well-established two step analysis. *See, e.g., **Cozzo v. Tangipahoa Parish Council-President Gov't***, 262 F.3d 501, 511 (5th Cir. 2001); ***Bazan v. Hidalgo County***, 246 F.3d 481, 490 (5th Cir. 2001); ***Hare***, 135 F.3d at 325; ***Spann v. Rainey***, 987 F.2d 1110, 1114 (5th Cir. 1993). First, has Hill "alleged a violation of a clearly established constitutional right"? ***Hare***, 135 F.3d at 325. If so, was Defendants' "conduct ... objectively unreasonable in the light of the clearly established law at the time of the incident"? ***Id***.

Hill contends that the following conduct violated her constitutional rights: (1) Defendants' participation in her selective prosecution denied her equal protection; (2) the Board of Adjustments' denial of, and failure to reconsider, her variance request denied her equal protection; (3) such conduct by the Board denied her due process because it deprived her of a property interest; (4) the jury rigging by Prosecutor Drum, Police Chief Daniel, Council member Whitehurst, and other Council members denied her due process; and (5) Drum's multi-capacity role denied her due process.

Defendants originally contended that any claim based on Hill's criminal trials was barred by ***Heck v. Humphrey***, 512 U.S. 477, 486-87 (1994), because neither of her convictions had been invalidated.

27

This assertion implicates Hill's allegations concerning selective prosecution, the jury list, and Drum's multi-capacity. **Heck**, however, has no bearing on resolving these issues. As noted, while Hill's appeal of the convictions was pending, the charges were dismissed at the request of the prosecution, two days after oral argument here.

Along this line, Defendants contend that any attack by Hill on her removal from office is barred by *res judicata* and collateral estoppel, because her state court challenge to her removal failed. But, as Hill notes, none of her claims are based on that removal.

1.

Hill maintains Defendants selectively prosecuted her for her zoning violations. A selective prosecution claim is premised upon denial of equal protection. *See* **Wayte v. United States**, 470 U.S. 598, 608 (1985) ("It is appropriate to judge selective prosecution claims according to ordinary equal protection standards."); **Oyler v. Boles**, 368 U.S. 448, 455-56 (1962) (claim that law imposing mandatory duty upon prosecutors to seek a more severe penalty against recidivists was only applied in minority of cases implicated claimant's equal protection rights).[4]

---

[4]Hill states in her amended complaint that the selective prosecution claim arises under "the equal protection component of the Due Process Clause of the Fifth Amendment". Perhaps Hill confuses her situation with that in **Wayte v. United States**, 470 U.S. 598, 608 & n.9 (1985), where selective prosecution was asserted against the *federal* government, thus implicating the equal protection component of the due process clause of the Fifth

28

To prove selective prosecution, a criminal defendant must show: "first, that others similarly situated generally have not been prosecuted; and second, that the Government's prosecution of him is selective, invidious, in bad faith or based on impermissible considerations such as race, religion, or his exercise of constitutional rights". *United States v. Kahl*, 583 F.2d 1351, 1353 (5th Cir. 1978); *see* *Wayte*, 470 U.S. at 608 ("the decision to prosecute may not be deliberately based on an unjustifiable standard such as race, religion, or other arbitrary classification, including the exercise of protected statutory and constitutional rights" (internal citations and quotation marks omitted)); *United States v. Lawrence*, 179 F.3d 343, 349-350 (5th Cir. 1999) (same), *cert. denied*, 528 U.S. 1096 (2000). The district court ruled that Hill had presented evidence she was prosecuted while others similarly situated were not. As discussed, under our limited review, we must accept this evidence as true.

Defendants maintain they are entitled to qualified immunity because Hill has not alleged selective prosecution based on an improper consideration such as race, religion, or the exercise of constitutional or statutory rights. Hill responds that, to the extent her selective prosecution claim must be analyzed as an equal

Amendment, a component recognized by **Bolling v. Sharpe**, 347 U.S. 497, 498-500 (1954). Because Hill's § 1983 selective prosecution claim concerns *state* actors, it arises instead under the equal protection clause of the Fourteenth Amendment.

protection claim, it can be grounded in Defendants' personal vindictiveness.  Hill acknowledges that neither the Supreme Court nor this court has decided whether a selective prosecution claim may be premised solely on that factor.

In *Bryan v. City of Madison, Miss.*, 213 F.3d 267 (5th Cir. 2000), *cert. denied*, 531 U.S. 1145, our court:  acknowledged the Seventh Circuit's recognition of a selective prosecution claim based solely upon personal vindictiveness, *see **Esmail v. Macrane***, 53 F.3d 176 (7th Cir. 1995); and observed that our circuit has "never specifically addressed whether such a motive would be enough to support an equal protection claim without some other class-based discrimination, but that issue is not before us ... because Bryan has failed to allege it".  *Id*. at 277 n.18.  Accordingly, it is unsettled in this circuit whether a prosecution based on personal vindictiveness, without any other impermissible consideration, can violate equal protection.

We need not decide this issue, however, because the inquiry at hand is, *inter alia*, whether Hill has alleged the violation of a *clearly established* constitutional right.  "To show that a right is clearly established, the plaintiff does not have to refer to precedent that is directly on point, or that declares that the conduct in question is unlawful." ***Shipp v. McMahon***, 234 F.3d 907, 915 (5th Cir. 2000), *cert. denied*, 121 S. Ct. 2193 (2001). Instead, a right is clearly established when "a reasonable official

30

would understand that what he is doing violates that right". *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In other words, "in the light of pre-existing law the unlawfulness must be apparent". *Id.* When considering what is pre-existing law, we look to precedent of the Supreme Court and this circuit. *See Shipp*, 234 F.3d at 915 (citing *Boddie v. City of Columbus*, 989 F.2d 745, 748 (5th Cir. 1993)).

A prosecutorial decision based on personal vindictiveness is far removed from our established requirement that the improper consideration be based on race, religion, the exercise of a constitutional right, or some other similar classification. For example, in both *Kahl* and *United States v. Johnson*, although our court ultimately concluded there was no selective prosecution, the defendants claimed selective prosecution because they were active tax protesters. *See Kahl*, 583 F.2d at 1353; *Johnson*, 577 F.2d 1304, 1306-07 (5th Cir. 1978). In *United States v. Greene*, 697 F.2d 1229, 1238 (5th Cir.), *cert. denied*, 463 U.S. 1210 (1983), although our court again determined there was no selective prosecution, the defendants asserted they were prosecuted because they were leaders in the 1981 air traffic controllers' strike.

Similarly, in *Wayte*, although the Supreme Court determined there was no selective prosecution, the defendant asserted selective prosecution because he was a vocal opponent of selective service registration. *Wayte*, 470 U.S. at 604. And, more recently,

31

in *United States v. Armstrong*, 517 U.S. 456, 470 (1996), the Court rejected the defendant's selective prosecution claim, but there, the defendant's assertion was based on his race.

As stated, regarding whether a selective prosecution claim, based on denial of equal protection, may be predicated solely on a motive of personal vindictiveness, neither the Supreme Court nor this circuit has recognized such a claim. Therefore, it is not apparent today, much less in 1998 when this prosecution took place, that such conduct would be unlawful in the sense it could constitute an equal protection violation. Accordingly, Hill has not alleged the violation of a *clearly established* constitutional right.

As a result, we need not reach the second prong of the qualified immunity analysis. The district court erred in denying qualified immunity on this claim.

2.

Hill next contends that the Defendant members of the Board of Adjustments violated her equal protection rights when they denied, and refused to reconsider, her zoning variance request. "[T]he Equal Protection Clause essentially directs that all persons similarly situated be treated alike". *Wheeler v. Miller*, 168 F.3d 241, 252 (5th Cir. 1999) (internal quotation marks omitted) (citing *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493,

32

510 (5th Cir. 2001). Therefore, as a general rule, it follows that, in order "to establish an equal protection claim the plaintiff must prove that similarly situated individuals were treated differently". *Wheeler*, 168 F.3d at 252; *see Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000) ("It is clearly established that a state violates the equal protection clause when it treats one set of persons differently from others who are similarly situated.") Thus, to allege that the variance denial violated a clearly established constitutional right, Hill must, at the least, allege that, while her request for a variance was denied, another similarly situated person was granted a variance to live in a business district.

Hill bases different treatment on her assertion that no one has ever been denied a variance to live residentially in a business zone. Hill attempts to support this by citing her affidavit. Hill, however, does not make such a statement in her affidavit.

In considering this assertion, the district court cited Hill's response in opposition to summary judgment, in which she states: "[I]n the history of Ordinance 125, no one has ever been denied a variance requesting to live residentially in a business zone". Of course, as discussed *supra*, Hill's response is not evidence. *See* FED. R. CIV. P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, *by affidavits or as otherwise provided* in

33

this rule, must set forth *specific facts* showing there is a genuine issue of material fact for trial" (emphasis added)); **Skotak**, 953 F.2d at 914 (in responding to motion for summary judgment, non-moving party "must, *either by submitting opposing evidentiary documents or by referring to evidentiary documents already in the record*, set out specific facts showing that a genuine issue exists") (emphasis added and emphasis in original). Moreover, a review of the summary judgment record reflects that Hill has not otherwise offered evidence that any other similarly situated person has ever been denied a variance.

Apparently in an effort to circumvent this, Hill states in her affidavit that she has "personal knowledge of each of the matters stated [in her affidavit] *and in [her] Response* to Motion for Summary Judgment and they are true and correct". Obviously, such a broad, conclusory statement does not transform the statements in her response into summary judgment evidence.

First, if such a statement could suffice, substantive affidavits would no longer be necessary; instead, a party could merely file a one sentence affidavit bootstrapping into the affidavit all statements made in the response. This would circumvent the requirements of Rules 56(c) and (e) of the Federal Rules of Civil Procedure that require that evidence be asserted through the use of affidavits, depositions, and the like. *See* FED. R. CIV. P. 56(c) and (e).

Furthermore, Rule 56(e) requires that an affidavit "set forth specific facts". FED. R. CIV. P. 56(e). Any attempt to incorporate the response into her affidavit did not "set forth specific facts". Instead, her statement seeking to do so simply alludes to the numerous statements in the response, and in no way brought to the district court's attention the facts to which she was supposedly swearing. Moreover, because a response usually contains not only statements concerning facts, but also concerning contentions and legal analysis, the district court would be required to attempt to decide which statements were "facts" — evidence.

Any reliance on this statement is also inconsistent with Hill's recitation in her six page affidavit of numerous other facts she also presented in her response. Accordingly, if her intent was to use the incorporating statement in her affidavit to transform her response into summary judgment evidence, the remainder of her affidavit would not have been necessary. In addition, if her assertion in the response regarding no other variance denials was to be supported by this statement in the affidavit, Hill should have cited to that portion of the affidavit, which she did not.

Regarding this equal protection claim, and because Hill has not offered evidence that she was treated differently than others similarly situated, she has not alleged the violation of a clearly established constitutional right regarding the Board's denial of the variance. Accordingly, Defendants are entitled to qualified immunity against this claim.

35

3.

Hill next asserts that the Board's denial of, and failure to reconsider, her variance request denied her due process. A prerequisite to such a claim is "denial of a constitutionally protected property right". **Bryan**, 213 F.3d at 274; *see* **Spuler v. Pickar**, 958 F.2d 103, 106 (5th Cir. 1992) ("threshold issue is whether [claimant] held any constitutionally-protected property right"). Hill relies upon the denial of a property right as recognized by **Shelton v. City of College Station**, 754 F.2d 1251 (5th Cir. 1985), *modified on reh'g*, 780 F.2d 475 (5th Cir.) (en banc), *cert. denied*, 477 U.S. 905 (1986). The **Shelton** plaintiffs sued under § 1983, claiming the board of adjustments' zoning variance denial violated due process. The plaintiffs' building was subject to a zoning requirement that, in order to operate a business there, the plaintiffs had to provide required off-street parking. Several requests by them were denied. The plaintiffs presented evidence that many neighboring businesses were in violation of the ordinance and that numerous variances had been granted to other applicants.

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law — rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

36

**Board of Regents of State Colls. v. Roth**, 408 U.S. 564, 577 (1972).

In this regard, our **Shelton** en banc court recognized that Texas law conferred upon the plaintiffs the right to seek a variance, with that right including judicial review of the administrative decision. **Shelton**, 780 F.2d at 479. Our en banc court then observed: it "can be argued that because [the plaintiffs] bypassed this state-furnished remedy, the state did not deprive them of any property, at least to the extent that the ignored remedy was a part of the protected property interest". **Id**. The plaintiffs responded that the variance denial deprived them not only of their right to seek a variance, but of the underlying use of their property as well. The en banc court, however, did not resolve this issue. It disposed of the case by deciding not whether the variance-denial implicated a property interest, but, assuming one was implicated, whether the board's actions were violative of due process. **Id**.

a.

The **Shelton** en banc court's observation that a property interest may not be implicated where a landowner does not utilize the state created appellate process to challenge the board's decision is, at first glance, pertinent here; Hill never utilized her right under Texas law to challenge the Board's decision. *See* TEX. LOC. GOV'T CODE ANN. § 211.011 (Vernon Supp. 2001) (conferring

37

the right of appeal to any person aggrieved by a board of adjustments decision; such person "may present to a district court, county court, or county court at law a verified petition stating that the decision of the board of adjustment is illegal in whole or in part and specifying the grounds of the illegality").

We will not consider this possible forfeiture issue because Defendants have not raised it here.  They have asserted instead that Hill had no property interest in the variance because she had no legitimate claim of entitlement to the variance.  They base this on the Board's being vested with discretion to deny or grant the request.  As noted, if a party fails to brief an issue, we will not consider it.  *See* **St. Paul Mercury Ins. Co. v. Williamson**, 224 F.3d 425, 445 (5th Cir. 2000) ("we deem abandoned those issues not presented and argued in an appellant's initial brief"); **Blanchard v. Forrest**, 71 F.3d 1163, 1169 (5th Cir.) (will not "consider issues or arguments not raised in the appellant's brief"), *cert. denied*, 518 U.S. 1013 (1996).

Furthermore, Defendants did not raise this possible forfeiture issue in the district court.  Generally, we also "will not consider on appeal matters not presented to the district court".  **Blanchard**, 71 F.3d at 1169; *see* **Williamson**, 224 F.3d at 445 ("we [do not] consider matters not presented to the trial court").  Accordingly, we will not consider whether Hill's failure to appeal the Board's decision nullifies any property interest in the variance.

38

b.

In considering the variance-denial, the **Shelton** en banc court held: "federal judicial interference with a state zoning board's quasi-legislative decisions, like invalidation of legislation for irrationality or arbitrariness, is proper only if the governmental body could have had no legitimate reason for its decision". **Shelton**, 780 F.2d at 483 (internal quotation marks omitted). In other words, we must determine whether there was "a conceivable factual basis for the specific decision made". **Id**. at 480. A zoning decision, however, cannot "be justified by mouthing an irrational basis for an otherwise arbitrary decision.... The key inquiry is whether the question is at least debatable. If it is, there is no denial of substantive due process as a matter of federal constitutional law". **Id**. at 483 (internal citation and quotation marks omitted).

According to Hill, the Board's justification for the variance-denial is that it "did not want to alter the status of the property since it was subject to the divorce litigation". Hill maintains this reason is not rational because any Ordinance 125 variance is not transferrable — it expires when the recipient moves from the affected property. This contention, however, does not demonstrate it was irrational for the Board to wait until ownership of the property was conclusively determined. At most, it renders only debatable the legitimacy of the Board's justification. It is not

39

irrational that the Board would want to ensure that, before a variance was granted, even if that variance remained only with the person making the request, that the true ownership interest in the property is established.

Accordingly, for this due process claim, even assuming Hill alleged the violation of a clearly established constitutional right, the Defendants' conduct was not objectively unreasonable in the light of clearly established law. Therefore, they are entitled to qualified immunity for this claim.

4.

As discussed, Hill states in her affidavit that Defendants Drum (prosecutor), Daniel (police chief), Whitehurst (City Council member), and other Council members met with Judge Waldie and Charles Hill several times before Hill's criminal trial to assemble a list of persons, including spouses of Defendants, to serve as jurors for her second criminal trial. Hill maintains this conduct rendered her criminal trial fundamentally unfair, depriving her of due process. Again, we must *assume* these facts are true.

"[T]he Due Process Clause guarantees the fundamental elements of fairness in a criminal trial". *Spencer v. State of Texas*, 385 U.S. 554, 563-64 (1967); *see also Phillips v. Wainwright*, 624 F.2d 585, 587-90 (5th Cir. 1980) (considering whether trial court's exclusion of expert witness testimony rendered trial fundamentally unfair in violation of due process). In considering such a due

40

process claim, "[w]e examine the record ... only to determine whether the error was of such a magnitude as to deny fundamental fairness to the criminal trial, thus violating the due process clause". *Woods v. Estelle*, 547 F.2d 269, 271 (5th Cir.) (internal quotation marks omitted), *cert. denied*, 434 U.S. 902 (1977).

a.

Obviously, if the prosecutor, the judge, the police chief, and one or more City Council members formulate a pre-selected jury list of those likely to be sympathetic to the prosecution and then empanel a jury based on that list, the resulting trial is fundamentally unfair.  It goes without saying that such actions strike at the very heart of a fundamental guarantee of due process — that a criminal defendant will be adjudicated before an impartial tribunal.  *See Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) ("The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.").  Accordingly, Hill has alleged the violation of a clearly established constitutional right.

b.

Under the second prong of the qualified immunity analysis, we must determine whether such conduct was objectively reasonable in the light of clearly established law.  Such corruption of the jury selection process to increase the likelihood of a conviction is not objectively reasonable conduct.  Accordingly, Defendants Drum,

Daniel, and Whitehurst, as well as any other such participants (pursuant to the related § 1983 conspiracy claim) are *not* entitled to qualified immunity for their alleged role in pre-selecting jurors for Hill's criminal trial.

5.

The final claimed violation of a clearly established constitutional right concerns Drum's multi-capacity role: acting as prosecutor and Charles Hill's divorce attorney, as well as practicing law with Judge Waldie, the presiding judge. According to Hill, Drum's conflict of interest denied Hill a fundamentally fair trial, in violation of due process.

The Supreme Court has recognized that a prosecutor's conflict of interest can impact the fundamental fairness of a criminal trial, resulting in denial of due process. **Marshall,** 446 U.S. at 249; *see also* **United States v. Dahlstrom**, 180 F.3d 677, 682-84 (5th Cir. 1999) (considering whether participation of attorney in criminal securities fraud trial who also represented SEC in civil action arising from the same facts violated right to prosecution by impartial prosecutor), *cert. denied*, 529 U.S. 1036 (2000). In **Marshall**, the Court made clear: "We do not suggest, and appellants do not contend, that the Due Process Clause imposes no limits on the partisanship of administrative prosecutors". 446 U.S. at 249. Indeed, "[a] scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or

42

impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions". *Id*. at 249-50.

The Court, however, tempered this concern, noting: "Prosecutors need not be entirely 'neutral and detached[]'". *Id*. at 248 (quoting *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 62 (1972)). In addition, "prosecutors may not necessarily be held to as stringent a standard of disinterest as judges". *Young v. United States*, 481 U.S. 787, 807 (1987). Ultimately, the Court did not "say with precision what limits there may be on a financial or personal interest of one who performs a prosecutorial function, for here the influence alleged to impose bias is extremely remote". *Marshall*, 442 U.S. at 250 (internal footnote omitted).

In the one sentence of her brief discussing this claimed due process violation, Hill bases this claim on Drum's "multi-capacity nature". The simple fact that a prosecutor represents a criminal defendant's spouse in that defendant's divorce proceedings does not, by itself, demonstrate that the defendant did not receive a fundamentally fair criminal trial. The same is true where the city prosecutor practices law with the municipal judge. At most, any conflict of interest that may have been present would have been of an ethical, not a constitutional, concern. Were this not the case, any minor conflict of interest would result in a constitutional violation. Accordingly, Hill has not alleged the violation of a clearly established constitutional right.

## III.

In sum:  (1) we lack jurisdiction over the sovereign immunity denial; (2) Drum, in her individual capacity, is entitled to prosecutorial immunity *except* for Hill's due process claim based on the alleged jury rigging; and (3) the other individual Appellant Defendants, in their individual capacities, are entitled to qualified immunity, *with the exception* that Drum, Daniel, Whitehurst, and possibly others (through the related conspiracy claim) are not entitled to qualified immunity from Hill's due process claim based on the alleged jury rigging.

Therefore, the summary judgment denial is **AFFIRMED IN PART, REVERSED IN PART,** and **REMANDED** for further proceedings consistent with this opinion.